May Term, 1856.

McCool
v.
The State.

---

## McCool *v.* The State.

Acts of the general assembly do not take effect, under the constitution of 1851, until published by authority, except in cases of emergency, to be declared therein.

The secretary of state exercised a proper discretion, under the act of 1852, in causing the act approved *June* 17, 1852, districting the state for judicial circuits, to be printed and bound in the volume containing the local and special acts of that year, and distributed therewith.

The term of the *Howard* Circuit Court held on the 22d day of *November*, 1852, was not held at the time fixed by law; and the proceedings thereof are void.

APPEAL from the *Howard* Circuit Court.

Gookins, J.—At a term of the Circuit Court of the county of *Howard*, held on the 22d day of *November*, 1852, *McCool*, was indicted for a misdemeanor. At the following term, he pleaded in abatement that the *Howard* Circuit Court had no jurisdiction to find said indictment. A demurrer to this plea was overruled. Motions to dismiss the suit, and to quash the indictment, were also overruled, and on not guilty pleaded the state had judgment.

The question is, could a term of the *Howard* Circuit Court be lawfully held at the time the indictment was found? It was held at the time fixed by law previous to 1852. An act was approved on the 17th of *June* of that year, districting the state for judicial purposes, reducing the number of circuits from thirteen to ten, and placing *Howard* county in the ninth circuit, previous to which it had been in the eighth. Laws of 1852, p. 101. On the following day, an act was approved, fixing the time of holding Courts throughout the state. By that act the *Howard* Circuit Court was to be held on the 13th of *September*. *Ibid.*, 104. It provides that *hereafter* the Courts shall be held, &c. These acts were published in a volume separate from the revised statutes.

The position assumed for the state is, that they were improperly published at that time; that it was not the intention of the legislature that they should have taken effect before the close of the fall terms of 1852; and this intention is shown, it is said, from certain other acts passed at the same session, fixing the times of holding Courts under the thirteen circuit system. Laws 1852, pp. 105, 108, 109, 110, 111, 112, 113. The last refers to the twelfth circuit, and to the fall term only.

We think the statutes relating to the ten circuit system were properly put in force. The state had adopted a new constitution, which provided for an elective judiciary. The ninth section of the schedule required judges of the Supreme Court to be elected at the general election in *October*, 1852. As a part of the system, a Court of Common Pleas was organized, to which was given jurisdiction

*May Term, 1856.*

McCool
v.
The State.

*Monday, May 26.*

of a large part of the business theretofore transacted in the Circuit Court, and its judges were required to be elected at the same time; 2 R. S., p. 16, s. 1; and the circuits were enlarged in territory and reduced to ten in number. Acts do not take effect, except in case of emergency to be declared in the act, until published by authority. Const., article 4, section 28. An act declaring an emergency, and taking effect from its passage, approved *June* 18, 1852, contains the following provision: " Such of the general acts, passed at the present session, as in the opinion of the secretary of state should not be embodied in the revised code, shall be printed and bound with the local and special acts, in one volume, and shall be distributed in the manner and at the time now provided by law for the distribution of the general laws, and at as early a day as practicable." Laws 1852, p. 128. Under this act, those organizing the ten circuits, and fixing the times of holding Courts therein, were published and distributed.

We think the secretary of state did not abuse the discretion with which he was intrusted in so doing. Had he not done so, no elections could have been held that year for circuit judges, and if we now hold that those statutes were improperly published, it will follow that the ten judges were not legally elected, and, in fact, that the ten circuit system has not been and is not now in force; because neither the act organizing the ten circuits, nor that fixing the times of holding Courts under it, has been to the present time published, if that was not a legal publication.

It is said that all the acts of the same session are to be examined to ascertain the legislative intention, and that admitting that these acts were properly published, still we should so construe them as not to render void the entire proceedings of the *Howard* Circuit Court; and we are informed that the proceedings of several other Courts are in the same predicament. The importance of the question, on account of its grave and serious consequences, is certainly not overestimated, and we should be slow to arrive at a conclusion fraught with such consequences, if it

could be avoided consistently with any proper rule of construction; but it is not the *Howard* Circuit Court alone, nor those Courts which proceeded under the old system to hold their fall terms for that year, that are only to be affected. We have taken pains to inquire, and ascertain from judges of other circuits that after the *October* election in 1852, Courts were held in those parts of the state under the new system, and at times different from those under the old. Decide how we will, therefore, the consequence will be that the Courts in some parts of the state will be held void.

In looking at these various enactments, and construing them all together, as far as may be, we are forced to the conclusion that the *Howard* Circuit Court was not held at the time fixed by law. In the first place, it is difficult to avoid the effect of the word "*hereafter*," as it is used in the act of *June* 18th. "The several Circuit Courts of this state shall *hereafter* be held," &c., is the language employed, and we have seen that that act was in force when the *Howard* Circuit Court was held, and that it required it to be held at a time different from the 22d of *November*. The other acts referred to, except the last, were passed in the early part of the session, in *January* and *February*, and long before any judicial system had been matured. The Common Pleas act was not adopted until *May* 14th; the Circuit Court act, *June* 1. The system had then been determined upon, and nothing remained but to fix the number of circuits and the times of holding the Courts.

The act in reference to the twelfth circuit, (p. 113), it is true, was not approved until the 17th of *June*. It is enough to say, as well in reference to that act, as to all others of the series, that it is a well-known fact in our legislative history, that little attention is paid to acts of this kind by the members generally. It is left to the members from the particular circuit to arrange the matter to suit themselves, or their constituents, and any act they agree upon is passed as a matter of course. It is expected that they will see to it, that any act of that nature they may wish to have passed, will be in harmony with the

May Term, general legislation of the state. If, under such circum-
1856. stances, an act was passed in reference to the twelfth cir-
WRIGHT cuit, not in harmony with the general legislation of the
v. state, it can scarcely be expected that it should override a
FLORA. positive enactment contained in that general system.

STUART, J., was absent.

*Per Curiam.*—The judgment is reversed. Cause re-
manded, with instructions to the Circuit Court to dismiss
the suit for want of jurisdiction.

*H. P. Biddle*, for the appellant.

*R. A. Riley*, *N. B. Taylor* and *J. Coburn*, for the state.