STATE, EX REL. MAYR, JR., SECRETARY OF STATE *v.* MARION CIRCUIT COURT.

[No. 26,043. Filed June 10, 1931.]

502

*James M. Ogden,* Attorney-General, *Earl B. Stroup* and *Hugh D. Merrifield,* Deputy Attorney-Generals, for the relator.

*Cary A. Taughinbaugh, Edward H. Knight, James Deery, Herbert M. Spencer, Richard L. Ewbank* and *George H. Koons,* for respondent.

MARTIN, C. J.—The relator seeks a writ to prohibit the Marion Circuit Court from (a) exercising further jurisdiction over the subject-matter of a cause pending therein, wherein the city of Muncie is the plaintiff and the relator is defendant, and to prohibit said court from (b) trying and determining the issues of said cause, (c) from issuing any injunction restraining the relator from publishing in the acts of 1931 a certain House Bill, No. 6, which is alleged by said city of Muncie never to have been legally enacted and to have been signed by reason of fraud practiced upon the President of the Senate and the Speaker of the House, but alleged by said relator to be legal and valid and one proper for publication in the acts, and (d) to restrain said court from citing relator for contempt for disobedience of a temporary injunction

already issued by said court prohibiting him from publishing said House Bill.

Relator's petition shows that the temporary injunction referred to was issued by the Marion Circuit Court on April 13, 1931. Respondent's return shows such order to read in part as follows: "The parties now in open court agree that a temporary injunction be made and issued in this cause. It is therefore considered, ordered," etc. The relator, having agreed to the issuance of the temporary injunction, will not, in this proceeding, be heard to contest it and to seek immunity from contempt proceedings in the event he violates it.

Section 1244 Burns 1926, provides that this court may grant writs of prohibition for two purposes: (1) In aid of this court's appellate jurisdiction, and (2) to restrain certain trial courts to their respective lawful jurisdictions. . The time has passed for an appeal to be taken from the granting of the temporary injunction, and the only question before this court is whether the Marion Circuit Court is clearly without jurisdiction in the case above referred to now pending before it.

This court would be justified in holding that the action of relator in the lower court should estop him from applying here for a writ of prohibiton. By agreement, he submitted to the issuance of a temporary injunction by the lower court, and thereby to the jurisdiction of that court, and he has waited until that court has decided against him on his demurrer to the plaintiff's complaint before coming into this court and alleging that the lower court is without jurisdiction. Only the public importance of the question involved and the public necessity for expediting the publication of the acts of 1931 has impelled us to enter upon a consideration of the points discussed by counsel.

The city of Muncie, which has been exercising com-

plete control over bus lines operating therein (under an exception contained in a section of the Moorhead Amendment of 1925 to the Shively-Spencer Utility Law of 1913, §5, ch. 46, Acts 1925, §10168 Burns 1926, see *Denny* v. *Brady, Rec.* [1928], 201 Ind. 59, 163 N. E. 489), brought its suit in the Marion Circuit Court to prevent the Secretary of State from publishing as a law House Bill No. 6, which would divest all cities of such power of control. The complaint charges that House Bill 6 is only a pretended act and that it appears in its present form as a result of a conspiracy of persons, and of fraud and mistake of fact in the procuring upon the enrolled act of the purported signatures of the President of the Senate and the Speaker of the House.

Respondent files as an exhibit to its return herein the affidavit of the President of the Senate stating "that, at the time said bill . . . was presented to me, it was represented that [it] was enrolled in the form as the same had passed the Senate. . . . I signed said . . . bill . . . upon the representation that . . . (it) was in the form and contained the amendments of said Senate . . . and in the mistaken belief that [it] . . . included all of the amendments thereto . . . and . . . I did not discover until said bill had been so signed by me, that [it] . . . had not in fact passed said Senate." It is alleged in respondent's return that the Speaker of the House of Representatives (whose affidavit could not be obtained because he was at the time in Europe) signed the bill because it was represented and presented to him as being the bill that passed the House and Senate, and that he did not discover until later that it had never passed the Senate; that the House passed a resolution to recall the bill from the Governor, and that the Speaker would never have signed the instrument had he known it had never been passed or adopted by the Senate.

It is also alleged that both houses of the General As-

sembly, after the fact had been discovered that the bill as signed was not the bill that was passed, recalled, or did all in their power to recall the bill; that the Senate and House and the presiding officers thereof have repudiated and disclaimed the bill as it now appears, and have set aside and avoided any authentication there may have been. The relator here does not assert that House Bill 6 as it appears in his office was ever passed by the General Assembly.

Section 25, Art. 4, Constitution 1852, §128 Burns 1926 provides that:

> "A majority of all members elected to each house shall be necessary to pass every bill or joint resolution; and all bills and joint resolutions so passed shall be signed by the presiding officers of the respective houses."

An enrolled bill, properly authenticated, approved and deposited with the Secretary of State is conclusively presumed by the courts, in a majority of the jurisdictions where the question has been decided, to have been regularly enacted, and the courts will not go behind it and look at the legislative journals or other records. 36 Cyc. 971. In a minority of the jurisdictions, the presumption that the enrolled bill is regular is rebuttable, and the courts may go behind it and look at other records. 36 Cyc. 972. This court, since 1869, has followed the former, "the Enrolled Act Rule," as against the latter, "the Journal Rule."

Relator, in support of his application for a writ of prohibition and relying upon the Enrolled Act Rule, contends that the judicial department of the State of Indiana has no power to inquire into the fact whether the General Assembly, the legislative department, has acted to pass a law, when that act is authenticated by the signatures of the presiding officers of both houses of said assembly. He relies principally upon the cases of *Evans* v. *Browne*

(1869), 30 Ind. 514, 95 Am. Dec. 710; *Board, etc.,* v. *Burford* (1884), 93 Ind. 383, and *State, ex rel.,* v. *Wheeler* (1909), 172 Ind. 578, 89 N. E. 1, 19 Ann. Cas. 834. In *Board, etc.,* v. *Burford, supra,* the court said: "Judicial investigation stops with an examination of the title and contents of the act, and the evidence of its due attestation by the signatures of the Speaker of the House of Representatives and the President of the Senate, and its acceptance and filing, as an act of the Legislature, by the Secretary of State."

The weighty reason for the rule thus stated is the independence of the two co-ordinate branches of government, the legislative and the judicial, which prevents the courts from litigating purely legislative matters, and this reason seems, in most jurisdictions, to outweigh the fact that the courts in some instances, by their intervention, might prevent the enforcement of laws that were never in fact legally passed.

But the case now pending in the Marion Circuit Court presents a question that differs materially, in at least three important respects, from the cases which lay down the Enrolled Act Rule:

(1) The action in the Marion Circuit Court, by a city which will be materially affected by the bill in the hands of the Secretary of State if it becomes a law, is a direct attack on that bill, instituted before such purported act has acquired any force or effect by publication and promulgation.

(2) The plaintiff in the circuit court attacks not merely the fact that the bill was not regularly passed, but he *attacks the attestation of the bill.* His attack on the attestation is based on the charge that the signatures of the Speaker of the House and the President of the Senate were obtained *by fraudulent representations and* mistake of fact. He alleges that the bill so signed was not the bill which the Speaker and the President intended

to sign, that, in reality, the signatures, as that term is defined by law, were never affixed to the bill now in the hands of the Secretary of State.

(3) The plaintiff in the circuit court relies upon the alleged fact that the certification (if any) by the Speaker and President was rendered null by the subsequent action of the House and Senate—that there is now no certification.

The question of whether, in any attack that may be made on a law, it is permissible to go behind the signatures of the President and Speaker to the journals of the Senate and House has been discussed by the parties in this case, and we have noted the Indiana cases bearing on the subject, but, in the view we take, it is unnecessary to decide anything on that subject at this time and we do not do so.

We may grant that courts cannot look behind the bill to the legislative proceedings when the act is duly and lawfully attested, yet, when the very fact of the attestation of a bill is alleged to be due to fraud and mistake of fact or to have been recalled, we believe that the courts have the right and the duty to determine such questions. Ancient maxims of the law are.

"Qui per fraudem agit, frustra agit."
(What a man does fraudulently he does in vain.)
2 Rol. Rep. 17.

"Fraus et dolus nemini patrocinari debent."
(No one should encourage fraud and deceit.)
3 Co. 78.

"Dolus et fraus una in parte sanari debent."
(Deceit and fraud should always be remedied.)
Noy - Max. 45.

These maxims should prevail, and their application is not prevented by the rule of public policy hereinbefore referred to.

The statements of courts referred to by relator, that the question of whether or not an act of the General Assembly is a part of the law is a question of law and not of fact were not made in direct and timely proceedings which attacked the very signatures relied upon to give validity to the acts. We cannot agree with relator that, in a cause like this, "the courts cannot . . . set the same aside for fraud or mistake." In our opinion, the Marion Circuit Court has jurisdiction to hear and determine the equitable proceeding now pending before it.

Having jurisdiction of the subject-matter of such case and of the parties, and having (by the agreement of the parties) issued a temporary injunction from which no appeal was taken, it may now again be stated for an additional reason that the Marion Circuit Court will not be prohibited and restrained from holding for contempt anyone who disobeys such temporary injunction.

Relator contends that in publishing the acts he is completing the legislative function, and that, in his performance of that legislative duty, he cannot be interfered with by the courts. In this, he is in error, first, because he is an administrative officer performing an administrative duty, and, second, because, under the system of checks and balances in our republican form of government, the determination by the Marion Circuit Court of the question presented to it is not an interference with the legislative department.

Relator assumes that the effect of the temporary injunction of the Marion Circuit Court against the publication, etc., of House Bill 6 prevents the publication, etc., of all the other acts of the 1931 session of the General Assembly. This assumption is incorrect. The Constitution provides that:

"No act shall take effect until the same shall have been published and circulated in the several counties of this state by authority, except in case of emergency; which emergency shall be declared in the preamble or in the body of the law." §28, Art. 4, Constitution, §131 Burns 1926.

The statute provides that the Secretary of State:

"shall deliver to the state printer, at the earliest day practicable, copies of all acts . . . as they are passed by the general assembly . . . superintend the printing and binding . . . and deliver the proper number to the respective counties, as required by law." §11646 Burns 1926. "to the clerk of the Circuit Court of each county," etc. §11652 Burns 1926.

It has been held that portions of the acts of a session may be published and circulated in advance of other portions of such acts, *McCool* v. *State* (1856), 7 Ind. 378; *State* v. *Dunning* (1857), 9 Ind. 20; *Bravard* v. *Cincinnati, etc., R. Co.* (1888), 115 Ind. 1, 17 N. E. 183.

Public policy and welfare, as well as the statute, demand that the acts of the Legislature be promptly printed, distributed and placed in effect, and where, as here, the publication of only one act has been held up by an injunction, there is no reason why the Secretary of State should not proceed as the law directs with the remainder of the acts. If the ultimate outcome of the suit pending in the Marion Circuit Court is adverse to the plaintiff therein, and it is found that House Bill 6 should be printed and distributed it can then be "published and circulated in the several counties of this state by authority" by the Secretary of State.

The writ of prohibition is denied.

### SEPARATE OPINION.

MYERS, J.—In a few words, the action at bar proceeds upon the theory that the Marion Circuit Court is exceed-

ing its lawful jurisdiction in that it has assumed jurisdiction in a suit in equity to enjoin the Secretary of State from publishing and distributing throughout the state copies of a purported instrument designated as "House Bill No. 6" as a part of the acts of the General Assembly of 1931. In short, the basis for the relief asked in that suit is that House Bill No. 6 never passed both houses of the General Assembly; that the instrument characterized as House Bill No. 6 was never in fact signed by the presiding officer of the Senate, although his signature appears thereto, but was obtained through fraud, fraudulent representations and mistake; that the bill so designated as House Bill No. 6 was never passed or approved by the Senate; that the signature of the Speaker of the House was procured through fraud and mistake, and was by him permitted to go to the Governor of the state of Indiana through misapprehension of the facts and false information concerning the action of the Senate pertaining to the bill after it was passed by the House and sent to the Senate; that immediately upon the delivery of the so-called bill to the Governor, and, before he had acted upon it, both houses passed resolutions requesting the Governor to return the so-called bill, which request was refused.

Upon the foregoing general statement of facts, but in the complaint explicitly and with particularity alleged, the parties to the action in this court appeared in the court below and consented to a temporary injunction enjoining the relator here from publishing alleged House Bill No. 6, as a part of the acts of the 1931 General Assembly.

We are confronted with an original action predicated upon §1244 Burns 1926, by which we are informed that the Marion Circuit Court has determined that it had jurisdiction in the suit now pending before it and will, unless prohibited from so doing, proceed to hear and

determine the question of whether the instrument characterized as House Bill No. 6 in relator's office is genuine or a false and fraudulent paper, and, therefore, void.

The Marion Circuit Court is a court of general jurisdiction. It has jurisdiction of all classes of cases except such jurisdiction as may be conferred on other courts organized by legislative authority. §1376 Burns 1926. It has jurisdiction to grant injunctive relief, which was the purpose of the suit before it. It certainly had power to determine its jurisdiction over the subject-matter as well as of the parties. Its decision in that respect was a judicial act.

Whether the case before the Marion Circuit Court is one upon its merits involving a purely legislative and executive power, and a subject-matter over which the judicial department of the state cannot interfere, must, of necessity, call for judicial determination, and, this being true, this court has frequently held that it will not undertake to control judicial discretion by the extraordinary writ of prohibition. If the Marion Circuit Court has mistaken its jurisdiction, the remedy of relator is by appeal.

Application for writ of prohibition should be denied.

Travis, J., concurs in this opinion.

## DISSENTING OPINION.

TREANOR, J.—We think the relator is entitled to a writ (a) prohibiting the Marion Circuit Court from issuing an injunction restraining the relator from publishing in the acts of 1931 a certain House Bill No. 6, and (b) restraining said court from citing relator for contempt for disobedience of a temporary injunction already issued by the Marion Circuit Court prohibiting the relator from publishing said House Bill. The suit which occasioned relator's application for a writ of prohibition was instituted in the Marion Circuit Court, not

for the purpose of restraining the Secretary of State from acting under an allegedly unconstitutional statute, but for the purpose of restraining the Secretary of State from acting under an admittedly valid statute in the performance of his duties in connection with the printing and publishing of the acts of the General Assembly of 1931. Section 11646 Burns 1926, provides that the Secretary of State "shall deliver to the state printer, at the earliest day practicable, copies of all acts, joint resolutions," etc.; other sections provide for other action by the Secretary of State in the matter of completing the publication and distribution of the acts of the General Assembly. The theory upon which the temporary injunction was sought and obtained was that House Bill No. 6 was not an "act" of the general assembly; that the Secretary of State was under no duty to publish and circulate the same; and that the publication and distribution of House Bill No. 6 would result in irreparable injury. Without considering the question of the validity or invalidity of House Bill No. 6, we believe that when "the manuscript containing House Enrolled Bill No. 6 which bears the signature of the Speaker of the House of Representatives and of the President of the Senate, as approved and signed by the Governor of the State of Indiana," was delivered by the Governor to the Secretary of State, such manuscript constituted an act of the General Assembly within the meaning of §11646 Burns 1926; and consequently the Secretary of State has been enjoined from the performance of an act expressly required of him by statute. Granting that the act in question is purely ministerial, a court of equity has no jurisdiction, upon the basis of the showing in this case, to interfere with its performance. If House Bill No. 6 is not a valid act, it cannot be made valid by publication and distribution. All presumptions of validity which

can exist in favor of House Bill No. 6 arose when it was deposited with the Secretary of State. *Evans* v. *Browne* (1869), 30 Ind. 514, 95 Am. Dec. 710; *Bender* v. *State* (1876), 53 Ind. 254; *Board, etc.,* v. *Burford* (1884), 93 Ind. 383; *Western Union Telegraph Co.* v. *Taggart* (1895), 141 Ind. 281, 40 N. E. 1051, 60 L. R. A. 671; *Lewis* v. *State* (1897), 148 Ind. 346, 47 N. E. 675. Any attack which can be made on a purported legislative act before publication and distribution can be made whenever such act is sought to be enforced as the law of the state. If the facts in the history of House Bill No. 6 make inapplicable the rule of conclusive presumption of regularity and validity, the rule should be disregarded in any proceeding attacking the validity of said bill. Interference by one department of government with the normal functioning of another department in the performance of its duties presents a serious and delicate problem, and the courts should refrain from using the extraordinary powers of injunction and prohibition unless clearly required to do so in order to avert serious injury. No irreparable injury, in fact, no inconvenience, in the matter of testing the validity of House Bill No. 6 would be occasioned by requiring interested parties to raise the question after publication and distribution of the acts of the 1931 General Assembly. The merits of the controversy could be tried out by use of the declaratory judgment statute, admirably designed for such a situation (*Zoercher* v. *Agler* [1930], *ante* 214, 172 N. E. 186, 172 N. E. 907, 70 A. L. R. 1232); or by a suit to enjoin the Public Service Commission from enforcing the act as a law of the state; and one suit will dispose of the controversy.

The present situation demonstrates the wisdom of using one of the foregoing courses. If the Secretary of State had not been enjoined, the acts of the 1931 General Assembly would have been published weeks ago

and a suit to test the validity of House Bill No. 6 on the merits would now be well advanced. Furthermore, we should have avoided establishing the dangerous precedent of judicial interference with the Secretary of State in his plain legal duty of publishing and distributing the acts of the General Assembly, an indirect interference with the legislative function itself. The writer sees no difference in principle between enjoining the publication and distribution of a Senate or House bill which is alleged to be "no act" because of failure to follow the requirements of the Constitution in respect to procedure, and one which is alleged to be unconstitutional because its subject-matter violates the Constitution. The only ground upon which a court can declare any action of the General Assembly invalid is that of unconstitutionality. In the instant case, it is urged that House Bill No. 6 is "no act" of the General Assembly for the reason that it was not passed by "a majority of all members elected to each house" and not legally "signed by the presiding officers of the respective houses," as required by §25, Art. 4 of the State Constitution, which argument, in effect, reduces to the proposition that the bill is *unconstitutional* for the reasons given. If the House Bill No. 6 is not an "act" of the General Assembly, it is because the procedure connected therewith, while the bill was still under the control of the General Assembly, was not in accordance with constitutional requirements; in other words, the General Assembly is without power, under the Constitution, to enact a bill in the manner alleged to have been followed in the case of House Bill No. 6. But, if the 1931 General Assembly had passed a bill containing more than "one subject and matters properly connected therewith" and with a title which did not express any of the subjects in the body of the act, such action of the General Assembly, though embodied in the form of a bill, would have been unconstitutional

and have resulted in a nullity, for the reason that such action does not meet the requirements of §19, Art. 4 of the State Constitution, which provides that "every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." If the constitutionality of House Bill No. 6 can be litigated by the device of a suit to enjoin the Secretary of State from publishing and distributing it, why should not the same device be available to test the constitutionality of the foregoing assumed act which violates §19, Art. 4 of the State Constitution? Or to try and determine the constitutionality of any act, whether the supposed constitutional defect is due to manner of enactment, form or subject-matter?

Further, we do not believe that the Secretary of State has any discretion in the matter of omitting one or more acts from his publication of the acts of the General Assembly and we do not think the courts should, in effect, amend §11646 Burns 1926. In the cases of *McCool* v. *State* (1856), 7 Ind. 378; *State* v. *Dunning* (1857), 9 Ind. 20, and *Bravard* v. *Cincinnati, etc., R. Co.* (1888), 115 Ind. 1, 17 N. E. 183, the acts which were published separately and circulated by the Secretary of State were published and circulated under special authority of the General Assembly. We believe that the Secretary of State, in the absence of special authorization by the General Assembly, is under a legal duty to include in one publication all acts of a particular session of the General Assembly. We think it cannot be seriously contended that the Secretary of State has any discretion in the matter, nor that the present Secretary of State could have refused to publish House Bill No. 6 in the absence of any court action challenging the validity of said bill. We do not think the facts of the unusual, not to say weird, history of House Bill No. 6, would constitute a defense to any action of mandate to compel its publica-

tion by the Secretary of State. The relator may well doubt whether he can, without violating his oath of office, publish the remaining acts of the 1931 General Assembly, even though the order of the Marion Circuit Court covers only House Bill No. 6.

We think the allegations in the original complaint filed in the Marion Circuit Court make a *prima facie* case for judicial investigation of the alleged invalidity of House Bill No. 6, and consequently the Marion Circuit Court should not be prohibited from taking jurisdiction over the subject-matter, when presented in a proper suit, but we cannot agree that the facts alleged give jurisdiction to the Marion Circuit Court to restrain the Secretary of State from including House Bill No. 6 in the published acts of the 1931 General Assembly of Indiana.

Roll, J., concurs in this opinion.