WELSH, GOVERNOR, ET AL. *v.* SELLS ET AL.

[No. 30,442. Filed October 2, 1963. Rehearing denied October 23, 1963. Motion for leave to file amended petition for rehearing overruled October 30, 1963.]

424

426

*George J. Zazas, Raymond W. Gray, Robert L. McLaughlin* and *Barnes, Hickam, Pantzer & Boyd,* of counsel, of Indianapolis, for appellants.

*Lloyd L. DeWester, Jr.,* for Dallas Sells and Committee on Political Education, appellees.

*Edwin K. Steers,* Attorney General, *Lloyd C. Hutchinson* and *Charles W. Rau,* Deputy Attorneys General, for Attorney General, appellee.

*John S. Grimes*, for Indiana Farm Bureau, Inc., *Bose, Buchanan, McKinney & Evans*, for Indiana School Boards Association, *Bell & Bell*, for Indiana State Teachers Association, *Baker & Daniels*, for Indiana Retail Council, Inc., *Ross, McCord, Ice & Miller*, for Indiana State Chamber of Commerce, *Nelson G. Grills*, for "Hoosiers for Good Government" and North Hammond Business Men's Association, all of Indianapolis, *Link, Link & Franceschini*, of LaPorte, for Marvin A. Sedgwick, and *Luke White*, of Covington, for Commission on General Education of the Indiana State Board of Education, amicus curiae.

PER CURIAM.—This is an action brought by appellee Sells on behalf of himself and others similarly situated and by the Committee on Political Education, an unincorporated association, against James C. Courtney, as Revenue Commissioner of the State of Indiana, Matthew Welsh, as Governor of the State of Indiana, and Edwin K. Steers, as Attorney General of the State of Indiana, for a judgment declaring unconstitutional House Enrolled Act Number 1226, Chapter 30 of the Special Session of the 1963 Indiana General Assembly. This Act amended the Gross Income Tax Act of 1933, as amended (Burns' Statutes §64-2601, *et seq.*), by imposing a sales tax and a use tax on certain retail transactions and effecting certain changes in the gross income tax. A declaratory judgment and an injunction against enforcement of the Act was asked. Appellant Welsh, as Governor, and appellees Robert Hughes, as State Treasurer, and Dorothy Gardner, as State Auditor, were granted leave to intervene and were made parties defendant as members of the Indiana Revenue Board.

The trial court found and declared the Act to be unconstitutional, with the exception of Sections 21 and

22 thereof (which sections pertain to certain changes in the gross income tax). It entered an order enjoining the appellants and certain appellees from putting into effect or attempting to do so, sales and use tax provisions of the Act. A motion for a new trial was overruled and this appeal followed.

A number of constitutional questions are presented for our consideration. The briefing has been quite voluminous. In many instances we are urged to give consideration to arguments which go more to the merit and expediency of the tax law than to the constitutional questions involved. This court has previously stated:

> "We have no right to go into the merits of the proposed tax. Whether an act is wise or expedient is a matter for the legislature—not the courts. Those matters have no bearing on the constitutionality of the legislation. Our duty is to measure the constitutionality of the law by the yardstick of the Constitution." *Wright* v. *Steers, Atty. General, et al.* (1962), 242 Ind. 582, 591, 179 N. E. 2d 721, 726.

If the action of the General Assembly in passing this law is unwise or imprudent, the remedy is at the polls on election day—not in the courts.

We approach a consideration of the constitutional questions here involved, mindful of the limiting principle which controls us, that all reasonable doubt must be resolved in favor of the constitutionality of an act.

> " 'It is the duty of the court to sustain the constitutionality of an act of the General Assembly if it can be done by a reasonable construction, and any doubt concerning the constitutionality of an act must be resolved in favor of its validity.' 5 Ind. Law Encyc., Constitutional Law, §38, p. 310. State, P. R. R. Co. et al. v. Iroq. Cons. Dist. Ct. et al. (1956), 235 Ind. 353,

356, 133 N. E. 2d 848; Wright-Bachman, Inc. v. Hodnett et al. (1956), 235 Ind. 307, 316; 133 N. E. 2d 713; Fairchild, Prosecuting Atty., etc. v. Schanke et al. (1953), 232 Ind. 480, 483, 113 N. E. 2d 159." *Marion County Election Board et al.* v. *O'Brien et al.* (1960), 241 Ind. 36, 42, 169 N. E. 2d 287, 289; *Moore* v. *City of Indianapolis* (1889), 120 Ind. 483, 22 N. E. 424.

The proposed tax in question falls within a category of an excise tax upon retail sales transactions as defined in the Act. The complaint herein states that there is no expressed authority in the Constitution for the enactment of a sales tax. However, the law in this state is well settled in that respect. We have said:

"The power of legislation of the subject of taxation admits no limitation except where specifically imposed by the Constitution itself." *The State Board of Tax Commissioners et al.* v. *Holliday et al.* (1898), 150 Ind. 216, 219, 49 N. E. 14, 15.

We have further said:

"It is generally recognized that there is no limitation under the Indiana Constitution as to the number of excise taxes which may be imposed by the legislature." *Wright et al.* v. *Steers, Atty. General, et al.* (1962), 242 Ind. 582, 585, 179 N. E. 2d 721, 723.

It is next contended that the title of the Act contravenes Article 4, Section 19 of the Constitution of this state, since it does not notify retail purchasers that they shall "pay such taxes." It is additionally urged that the title does not specifically contain the words "sales tax" nor state that the tax is imposed on purchasers.

The title to the Act is as follows:

"AN ACT to amend an Act entitled 'an Act to provide for the raising of public revenue by imposing a tax upon the receipt of gross income, to provide for the ascertainment, assessment and collection of said tax, and to provide penalties for violation of the terms of this Act and declaring an emergency,' being Chapter 50 of the Acts of 1933, as last amended by chapter 293 of the Acts of 1961, to impose an additional excise tax on transactions of retail merchants constituting selling at retail and an additional excise tax on the use, storage or other consumption of tangible personal property in this state, redefining certain transactions constituting selling at retail for the imposition of such additional taxes, repealing the store license tax, amending the title thereto, increasing certain gross income tax rates, revising certain exemptions, providing an individual credit and declaring an emergency."

We have considered all these questions in cases previously before this court. We have said that a title need not be a complete index or abstract of the entire act. *Orbison* v. *Welsh, Governor, et al.* (1962), 242 Ind. 385, 179 N. E. 2d 727.

We have further said:

"The usual test applied in such a case is whether or not the title of the Act is misleading or fails to give fair notice of its contents." *Martin* v. *Ben Davis Conservancy District* (1958), 238 Ind. 502, 514, 153 N. E. 2d 125, 131.

The title to this Act states that the purpose of the Act is "to impose an additional excise tax on transactions of retail merchants." Every such retail transaction obviously involves a purchaser as well as a merchant or seller. Therefore, the title is sufficient to inform both retail merchants and retail purchasers of the imposition upon them of an excise tax.

It is further urged that there were irregularities in the adoption of the Act in the legislature. This question

is presented by an assignment of cross-errors on the ground that the trial court erred in excluding evidence as to the procedure followed in the enactment of the bill by the legislature. Appellees contend that the Senate Journal shows that the bill did not receive "a majority of all members elected to" the Senate, as provided in Article 4, Section 25 of the Constitution of Indiana. It is asserted that after the bill was amended at a conference of both houses, it was returned to the Senate and upon a vote of 25 ayes and 24 noes, the conference report was approved and the bill was then signed by the presiding officers of the respective houses as passed, as provided in Article 4, Section 25 of the state Constitution.

The appellees cite *Skinner and Others* v. *Deming and Others* (1851), 2 Ind. 558, wherein the court did hold that the journal entry prevailed over the certification of the presiding officials. However, since *Evans, Auditor of State* v. *Browne* (1869), 30 Ind. 514, this court has consistently held that the proper authentication of an enrolled act is proof of its proper enactment, with the exception that fraud practiced upon the legislature or its presiding officers would vitiate the certification. The last case in this state where this court allowed an act of the legislature to be challenged for fraud was *State ex rel. Mayr, Jr., Secretary of State* v. *Marion Circuit Court* (1931), 202 Ind. 501, 176 N. E. 626. In that case the Marion Circuit Court was permitted to entertain the question of whether an act of the legislature passed at the 1931 session was void because of fraud. It was challenged that the Speaker of the House and the President of the Senate were defrauded into signing a bill which had never been passed by both houses of the General Assembly. No fraud of that character is charged in this

case. *State ex rel. Cline* v. *Schricker* (1949), 228 Ind. 41, 88 N. E. 2d 746.

As recently as 1956 this court said:

"Once an enrolled act is authenticated by the presiding officer of the Indiana General Assembly, signed by the Governor and filed in the office of the Secretary of State under the law of this state, the validity of its enactment may be questioned only for fraud." *Mogilner* v. *Metropolitan Plan Comm., etc. et al.* (1957), 236 Ind. 298, 321, 140 N. E. 2d 220, 231.

Although not raised in the complaint in the lower court, it is now asserted on appeal that double taxation makes the questioned Act unconstitutional. It is urged that some taxpayers may be paying a tax upon gross income and also paying a sales tax, cigarette tax or motor vehicle tax. We find nothing in the Constitution that limits the number of taxes that the legislature in its judgment, may see fit to enact. *Wright* v. *Steers, Atty. General, et al.* (1962), 242 Ind. 582, 179 N. E. 2d 721. We reiterate, the remedy as to the wisdom of such legislative action is at the polls at election time, rather than in the courts. The appellees cite no substantial authorities in support of their contentions on the point. As a result, we give it no further consideration.

The failure to reapportion the legislature, as provided in the Constitution, is presented as a ground for holding the act a nullity. This issue was not raised in the trial court and hence need not be considered on appeal. Were we to do so we would still be confronted with the recent case of *Fruit* v. *Metropolitan School District, etc.* (1961), 241 Ind. 621, 624, 172 N. E. 2d 864, 866. In that case we said:

"Therefore, if plaintiff's prayer on this point were to be granted and the court should judicially declare the 1959 legislature to have been a de facto assembly, it would avail the plaintiffs nothing in this case. So far as Chapter 261 of the Acts of 1959 is concerned, the act is valid, whether the members of the General Assembly be de facto or de jure."

Nothing is presented which conceivably overcomes the opinion of this court as expressed above.

It is next urged that the exemptions in the Act are discriminatory under Article 1, Section 23, as well as vague and uncertain under Article 4, Section 20 of the Constitution of Indiana. Also, Article 4, Section 23 of the state Constitution provides that all laws must be general in their application and uniform in their operation. Appellees argue that Section 4(b)(1) of the Act exempts farmers as a special class. Section 4(b) provides that " . . . the state gross retail tax shall not apply to the following transactions."

Paragraph (1) in question reads as follows:

"(1) Sales to farmers and other presons occupationally engaged in the business of producing food and commodities for human, animal or poultry consumption either for sale or for further use in producing such food and commodities for sale, of animal and poultry life to be used by the purchaser for such production of food and commodities, feed for such animals and poultry, and seeds, plants, fertilizers, fungicides, insecticides and other tangible personal property to be used for such production of food and commodities."

Following this paragraph are enumerated a number of other exceptions, such as the sale of wrapping material, containers used in packaging for retail sales, newspapers, meals to school children, sales of certain manufacturing tools and equip-

ment, sales to the State of Indiana and its agencies and other governmental units, to mention but a few. Considering the language used, we feel the classification is proper since, at most, it is not limited merely to farmers, but also to *other persons occupationally engaged in the business of producing food and commodities for human, animal or poultry consumption. . . .* " The section, in our opinion, meets the requirements of Article 4, Section 23 of the Constitution as to its generality and also Article 1, Section 23, since it is applicable to all persons under the same considerations and in the same circumstances, namely those primarily engaged in the business of producing food for human and animal consumption. *Kelly* v. *Finney* (1935), 207 Ind. 557, 194 N. E. 157; *Strange* v. *Board, etc.* (1910), 173 Ind. 640, 91 N. E. 242.

Such classifications are found in the federal income statute as well as this state's gross income tax. Farming may be classified as a business for tax purposes. *Plant* v. *Walsh* (1922), 280 F. 722; *Wilson* v. *Eisner* (1922), 282 F. 38.

It is further pointed out that the provisions for exemptions and classifications are common to the retail sales acts found in the thirty-six states which have such methods of taxation.

"All sales tax laws exempt or exclude some retail sales. The reasons for this treatment vary. Goods used in the manufacturing process are exempt entirely or partially by all state laws to avoid tax pyramiding, that is, the situation where a tax is levied on a tax and the result is a retail price increase greater than the amount of the tax. The same rationale presumably has led to the exemption of such farm supplies as feed, seed, and fertilizer. Several states also exempt industrial machinery and fuel, and some states extend the exemption to farm machinery.

"To mitigate the regressivity of the sales tax, 'necessities' are frequently exempted, principally groceries, medicine, schoolbooks and clothing. . . ." Current Studies of Indiana Tax Policy, The Retail Sales Tax, Indiana Commission on State Tax and Financing Policy First Report — 1962, page 11.

It is apparent that the exemption is for the purpose of treating as a wholesale sale the transactions specified and hence the transaction becomes taxable under the gross income tax rather than the retail sales tax. (See Section 3 of the Gross Income Tax Act.) The section is not discriminatory. It merely places a farmer and like persons engaged in the production of food for consumption in the category of certain manufacturers who are also exempted under the Act.

The legislature has latitude in determining classifications for taxation as long as it is based upon some reason connected with the subject matter. *Board, etc.* v. *Johnson* (1909), 173 Ind. 76, 89 N. E. 590; *Crittenberger, Auditor* v. *State, etc., Trust Co.* (1920), 189 Ind. 411, 127 N. E. 552; *Miles* v. *Dept. of Treasury* (1935), 209 Ind. 172, 199 N. E. 372.

Neither do we believe the section attacked is void for any vagueness as to the type of business transaction which is excepted from the application of the tax. *Hunt* v. *State* (1924), 195 Ind. 585, 146 N. E. 329; *Ule* v. *State* (1935), 208 Ind. 255, 194 N. E. 140.

Appellees argue and the trial court so found, that Section 3 of the Act gives the Department of Revenue the power to establish brackets for the collection of taxes, which is in violation of Article 4, Section 1 of the Indiana Constitution because of an improper delegation of legislative authority. Section 3, however, in

our opinion is not controlling, since Sections 1 and 6 of the Act have a greater constitutional infirmity therein which makes the attempted delegation of authority in Section 3 void.

Section 1 of the Act provides as follows:

" . . . Such tax shall be borne by the purchaser and shall be paid by the purchaser to the retail merchant, who shall collect the tax as agent for the state, at the rate fixed herein, any fractional cent of tax of 1/2 cent or more to be 1 cent of the tax, *unless modified* by the brackets of prices for tax collection established by the department pursuant to Section 38." (Our emphasis.)

Section 6 of the Act provides:

" . . . Such tax shall be paid by the purchaser to the retail merchant who shall collect the tax as agent for the state, at the rate fixed herein, any fractional cent of tax of one-half cent or more to be one cent of tax, *unless modified by the brackets of prices for tax collection established by the department pursuant to Section 38.*" (Our emphasis.)

This particular clause in each section is definitely an unlawful delegation of power to the Department. Its purpose is to give the power to *modify* the express provisions of the statute. To modify means to "change, to alter, to qualify." Webster's Third International Dictionary.

Constitutionally, no one can modify or change the law except the legislature. It cannot delegate that power. Article 4, Section 1, Constitution of Indiana. We arrive at the conclusion that this part of the Act is unconstitutional by reason of Article 1, Sections 25 and 26 of the Constitution of Indiana.

Section 25 provides:

"No law shall be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution."

Section 26 provides the converse:

"The operation of the laws shall never be suspended except by the authority of the General Assembly."

Furthermore, the purported authorization as provided in Section 38 of the Acts of 1933 as amended by Section 3 of this Act, is so indefinite that any action of the Department in connection therewith would be impossible of judicial review. This section as amended provides:

"The operation of the laws shall never be suspended except by the authority of the General Assembly."

Furthermore, the purported authorization as provided in Section 38 of the Acts of 1933 as amended by Section 3 of this Act, is so indefinite that any action of the Department in connection therewith would be impossible of judicial review. This section as amended provides:

"The department shall prepare *suitable brackets* of prices for the collection of both the state gross retail tax and the use tax in order to eliminate fractions of one cent and so that the aggregate collections of such taxes *by a retail merchant,* so far as may be practicable, shall be equal to two per cent (2%) of the gross *income subject to such taxes."* (Our emphasis.)

We cannot ignore the clear language of this provision which purports to authorize the Department to prepare "suitable brackets of prices for the collection of . . . the . . . tax so that the . . . collections of such taxes by *a* retail merchant, so far as may be practicable, shall be equal to two per

cent (2%) of the gross income subject to such taxes."
Significantly, the term "a retail merchant" is used
in the singular and not in the plural. Thus, this pro-
vision clearly authorizes the Department to separately
and severally consider and determine what constitutes
"suitable brackets" for each retail merchant, so that
"so far as may be practicable," this tax shall equal
two per cent (2%) of his income subject to such
taxes. So vast and indefinite an obligation thrust upon
the Department would obviously make its decisions as
authorized and contemplated by the Act incapable of
administration or judicial review.

In view of these constitutional provisions, we must
hold that those portions of Sections 1 and 6 reading:
"unless modified by the brackets of prices for tax
collection established by the Department pursuant to
Section 38," are unconstitutional.

Section 3 attempts to give the Department the power
to fix "suitable brackets of prices for the collection"
of the taxes. This section must be read with
Sections 1 and 6, which attempt to give the
Department the authority to "modify" the rate
brackets which are fixed by the law. Section 3 is de-
pendent upon the right to modify these brackets under
Sections 1 and 6, and hence must fall with those por-
tions of those sections of the Act. Where the law has
definitely fixed the rate and brackets, the Department
cannot establish other brackets or modify the same
because of the constitutional provisions set forth above,
which grants such authority only to the legislature.

We further hold that Section 3 and those parts of
Sections 1 and 6 are clearly severable and their in-
validity does not affect the remainder of the
Act. The intention of the legislature in this
respect is clearly reflected in Burns'. §64-2631.

The present Act is amendatory to the 1933 Act. This severability clause is broad enough to leave the remainder of the Act complete in itself and capable of being fully executed. *Ettinger* v. *Studevent; Hale* v. *Dice* (1942), 219 Ind. 406, 38 N. E. 2d 1000.

Appellees further contend that there is an illegal delegation of authority in Section 5(c) which permits issuance of exemption certificates, and that the section is not constitutional under Article 4, Section 20 of the state Constitution, which provides that every act shall be plainly worded. Section 5(c) of the Act reads as follows:

"(c) Every retail merchant, manufacturer or wholesaler so registered, and the State of Indiana, every county, township, city and town of this state and every subdivision, agency and instrumentality thereof, is authorized to issue Exemption Certificates, in form prescribed by the department, certifying to the fact that the purchase of the tangible personal property and services described in such certificate constitutes a transaction exempt from the state gross retail tax. The department may permit, upon such terms or conditions as it deems reasonable, the issuance of blanket Exemption Certificates certifying that all or a specified kind or category of purchases during a stated period of time shall constitute exempt transactions. No person receiving any such Exemption Certificate from a purchaser authorized to issue such certificate shall have any duty to collect or any liability for any state gross retail tax in respect to the furnishing of property and services covered by such certificate."

The trial court particularly singled out the provision allowing the Department to issue blanket exemption certificates as being repugnant to our form of government.

The act imposes the gross retail tax upon the purchaser. The seller or retail merchant acts only as an

agent of the state in collecting it. Section 4 provides for certain exempt transactions. Section 5(c) provides the seller with a device whereby he can be assured of not being held liable for failure to collect the tax on those exempt transactions. It does not state, nor can it be found anywhere in the Act, that the Department has the authority to create an exemption by permitting the issuance of exemption certificates. This includes blanket exemption certificates. Section 4 is the exclusive source for determination of transactions which are exempt. It seems reasonable to assume from the section herein involved that the Department is authorized to prescribe forms of certificates by which a purchaser may certify that the purchase described therein falls within one or more of the exempt transactions set forth in Section 4. Therefore, Section 5(c) provides an administrative means of convenience to protect a seller who might otherwise be placed in a position where he could be subjected to penal action for failure to collect and remit the tax on an exempt transaction. Blanket exemption certificates fall in this category and only pertain to a purchaser who buys the same type of goods in an exempt transaction over a period of time and avoids the necessity of having to issue a new certificate for each purchase.

It is to be noted that the Internal Revenue Code provides for exemption certificates before an exemption can be claimed from the tax imposed on sales or transfers of capital stock. Internal Revenue Code 1954, Section 4345.

Another such provision for exemption certificates was contained in the Indiana Motor Vehicle Fuel Tax Act prior to 1955. Burns' §47-1538.

While this Section of the Act is clumsily worded and is certainly confusing, the intent of the legis-

lature may be seen as "through a glass darkly." However, the fact that the Act is not crystal-clear does not make it unconstitutional. As stated in *State ex rel. Spencer, Pros. Att'y.* v. *Baker, Judge* (1936), 212 Ind. 44, 52, 7 N. E. 2d 984, 988:

> " . . . A statute should not be held void for uncertainty, if any reasonable and practical construction can be given it. *Mere difficulty in ascertaining its meaning does not render it void. It is the duty of the courts to endeavor by every rule of construction, if possible, to give full force and effect to every enactment of the General Assembly not obnoxious to constitutional prohibitions.*" (Our emphasis.)

In *Mogilner* v. *Metropolitan Plan Comm. et al.* (1956), 236 Ind. 298, 322, 323, 140 N. E. 2d 220, 232, it was held that the "plain wording" provision in the Constitution does not require that each act be a model of rhetorical clarity, but merely susceptible to reasonable and intelligible construction:

> "Particular 11. Appellant asserts that the Act violates the provisions of Article 4, §20 of the Constitution of Indiana. . . .
>
> "We will, therefore, proceed to a consideration of said sections of the Act on the basis of this contention. Admittedly, the Act is far from a model of rhetorical clarity. However, if it is susceptible to reasonable and intelligible construction, it is the duty of the court to so construe it. The rule which this court has adopted regarding the construction of this constitutional provision has been stated as follows: ' . . . If a statute is susceptible of a reasonable construction which makes it intelligible and does not conflict with the Constitution, it will be given that construction and upheld, rather than a construction which would make it invalid. . . . ' *Shideler, Auditor* v. *Martin* (1922), 192 Ind. 574, 578, 136 N. E. 1, 2."

In the recent case of *Orbison* v. *Welsh, Governor, et al.* (1961), 242 Ind. 385, 422, 423, 179 N. E. 2d 727, it was contended that the Port Commission Act was unconstitutional because it was "unartfully drawn, cumbersome and unintelligible," in violation of Article 4, Section 10 of the state Constitution. We held "the Act is drafted in a manner that imports a reasonable degree of clarity and understanding. The intention of the Legislature is readily discernible and technical terms in general have been avoided. The purpose and content of the Act can be understood by persons reading the Act."

Being susceptible to both an intelligible and reasonable construction, this Act does not violate Article 4, Section 20 of the Indiana Constitution.

Furthermore the fact that this provision of the Act may result in some illegal trafficking in exemption certificates and in perplexities of administration does not make the section unconstitutional as providing for an unauthorized delegation of authority in the Department. We find no unlawful delegation of authority here.

The next question raised is whether the act violates Article 1, Section 21 of the Indiana Constitution, which provides in part: "No man's particular services shall be demanded, without just compensation. . . ." Section 1 of the Act reads as follows in part:

> " . . . Such tax shall be borne by the purchaser and shall be paid by the purchaser to the retail merchant, who shall collect the tax as agent for the state, at the rate fixed herein, . . . ." See also like language in Section 6.

In the first place, we note that there is no party to this action who has or claims to have his constitutional right denied for this reason. In the com-

plaint, plaintiff Committee on Political Education is alleging to be an unincorporated association, with one of its stated purposes being to secure for its members and all citizens a fair system of taxation. Plaintiff Dallas Sells alleges that he is a citizen and taxpayer of Indiana and of the United States of America, bringing the action on behalf of himself and all others whose situation is the same as his own. There is no allegation that either of them are retail merchants or are engaged in any retail business which would make them agents for the state.

In the second place, the issue was not raised by the pleadings nor put into issue at the trial of the cause. The trial judge stated his finding of unconstitutionality on that ground was "merely dicta." Although we are not bound to consider this question, in order to eliminate the uncertainty as to the constitutionality of this Act on that issue and because of the public interest, we have given it special scrutiny.

Appellants argue that the cases of *Gafill* v. *Brecken, Auditor* (1925), 195 Ind. 551, 145 N. E. 312, 146 N. E. 109, and *Akers et al.* v. *Handley et al.* (1958), 238 Ind. 288, 149 N. E. 2d 692, are controlling.

Appellees attempt to distinguish these cases. However, we do not need to determine whether these cases govern the instant cause. There is no evidence in the record from which this court might determine that under the bracket system provided by the Act, the amount of tax collected by the retailer might not exceed his liability for payment of such taxes. We point out that the law fixes any fractional cent of tax of one-half cent or more to be one cent of tax; thus any sale of items selling for twenty-five cents would bring a tax of one cent or a rate of 4%, yet the retailer only pays a tax of 2% on the gross

sales of such items. Within the framework of the law itself there is an opportunity for the retailer to recover monies in the nature of compensation for the service required of him. Although the Act does not expressly provide for such to be compensation, we cannot take judicial knowledge of the fact, if it be a fact, that no such compensation will result from the operation of the Act as provided. In the absence of any evidence in support of such fact, there is no factual basis upon which this court could rule adversely to the Act.

It is contended that the tax imposed on the gross income of retailers selling items for twenty-four cents or less, where they collect no tax, requiring them to pay 2% on the gross income from such sales, is in violation of the Fourteenth Amendment to the United States Constitution and also Article 1, Section 21 of the Indiana Constitution which provides in part: " . . . No man's property shall be taken . . . without just compensation . . . ," and Section 23 (privileges and immunities clause).

Section 14 of the Act here in question, provides in part:

> "Notwithstanding the amount of state gross retail tax or use tax collected from purchasers, the retail merchant shall be liable for and shall remit, as the case may be, 2% of the gross income of the retail merchant from *taxable transactions* to be included in his return for the reporting period . . . ." (Our emphasis.)

The Act continues to provide: "Every retail merchant shall be personally liable for such taxes, which shall constitute a trust fund in the hands of the retail merchant and shall be owned by the State . . . ."

In view of the above provisions of the Act, the decisive question remains as to what are "taxable transactions" which must be included in the returns filed by the retail merchants. In this regard, Section 16 also provides in part that every tax payer " . . . shall file returns reporting *taxable transactions* . . . " (our emphasis) at stated periods. Thus, a reasonable construction of the Act is that the retail merchant is not required to report or pay taxes on *non-taxable transactions*. Such sales being not subject to the tax, the income received therefrom would not be included in the gross taxable transaction subject to the rate of 2%. Thus, by such construction we avoid the unconstitutionality urged that certain retail merchants would be subject to the payment of money as a tax for retail sales in cases in which the transaction was one in which they received no tax money because it involved a sales price at which the fractional tax would be less than 1/2 cent.

As we previously have stated, in arriving at a determination of the issues involved, in the case at bar we have been guided by the fundamental requirements that where the constitutionality of a statute is in question, we are compelled to resolve all doubts, implications and inferences in favor of the statute.

It is conceded that the legislature may pass unpopular, unwise, or inequitable laws in the exercise of its function as one of the three co-ordinate branches of our government. This court in a proper case will review the questioned legislation only to determine whether or not the statute meets the minimal constitutional requirements.

In a case properly before us, particularly where the statute carries a saving clause and is capable of severability, a determination that certain portions of

the act are unconstitutional will not destroy the effect of the entire act if the remaining portions thereof are complete, sensible and capable of being fully executed in a manner consistent with the purpose of the law.

In reaching a decision that the Act in question is constitutional (with the exceptions designated), this court is confronted with the fact that the purchasing public and retail merchants should be protected against liability, both criminal and civil, by reason of their failure to pay and collect taxes on transactions occurring during the period of the trial court's injunction. Undue hardships and injustices, without question, would occur were we to follow the principle of law that the reversal or overruling of an adjudication of unconstitutionality validates the statute from the date of its enactment. 16 C. J. S., Constitutional Law, §101, p. 469.

Necessities have imposed exceptions to the general rule of retroactivity. We said in *Martin* v. *Ben Davis Conservancy Dist.* (1958), 238 Ind. 502, 510, 153 N. E. 2d 125, 129:

> "The theory that a law held unconstitutional is no law at all and void ab initio for all purposes including retroactive invalidity runs counter to the hard facts of life. The actual existence of a statute prior to a determination of invalidity is an operative fact. Because of such de facto existence and reliance upon its validity, it has practical consequences which cannot be justly ignored. The past cannot always be erased by a simple judicial decree. . . ."

No court is so absolute that it can, by simply so decreeing, erase the past effects of and compliance with the trial court's injunction preventing the ▇ operation of the act in question during the period of this litigation. In justice to all parties

involved, our decision must have only a prospective effect from the date of its certification. Both purchaser and retailers would otherwise be subject to fines and penalties, including imprisonment, by reason of failure to comply with the act. A similar situation has confronted courts of sister states. The courts there have held that the tax act should only be effectuated prospectively "when the judgment of this court as here announced becomes final." *Wiseman* v. *Phillips* (1935), 191 Ark. 63, 84 S. W. 2d 91; *State* v. *Whitman* (1934), 116 Fla. 196, 156 So. 705; *Arizona State Tax Commission* v. *Ensign* (1953), 74 Ariz. 376, 257 P. 2d 392; *Oklahoma County* v. *Queen City Lodge, No. 197* (1945), 195 Okla. 131, 156 P. 2d 340; *Commonwealth* v. *Whitelaw* (1946), 302 Ky. 526, 195 S. W. 2d 71.

Under Rule 2-31 of this court, the Clerk is directed to certify this opinion forthwith upon the expiration of twenty (20) days following the date of this opinion, unless prior to said certification date a petition for rehearing is filed, and in that event, to certify the opinion forthwith upon the date of the determination of the case pursuant to petition, if the same is denied.

Notwithstanding the fact that the trial court's injunction will not be formally dissolved until final certification of this opinion, a stay of the injunction granted by the lower court is now issued, effective at this time to the extent of permitting the Indiana Department of State Revenue to proceed to establish administrative and operating procedures for the imposition and collection of the tax as herein questioned, including the processing of applications for registered retail merchant certificates, the issuance of information bulletins or instructions, the preparation of forms, and other

administrative steps incident to the orderly reimposition of the taxes.

The judgment of the trial court is reversed, with directions to render judgment for appellants and dissolve the injunction heretofore issued.

## OPINION ON PETITION FOR REHEARING

PER CURIAM.—The petition for rehearing filed by Edwin K. Steers, Jr., as Attorney General of the State of Indiana, asserts that, in part,

> "Said decision and opinion is violative of the Indiana Constitution, Art. 4, Sec. 25, when the opinion admits:
>
>> ' . . . that the Senate Journal shows that the bill did not receive "a majority of all members elected to" the Senate as provided in Article 4, Section 25 of the Constitution of Indiana,' "and . . . 'This record reveals that after the bill was amended radically at a conference of both houses, it was returned to the Senate and upon a vote of 25 ayes and 24 noes, the conference report was approved and the bill was then signed by the presiding officers of the respective houses as passed, as provided in Article 4, Section 25 of the state Constitution.' "

The court, on rehearing, on reviewing the record finds that the record in fact does *not* contain the Senate Journal, and the previous opinion has therefore been amended on rehearing to delete the statement as to what the Senate Journal disclosed in this case and to substitute therefor a statement as to the contentions of appellees, as to the contents of the Senate Journal.

Although not mentioned in the petitions for rehearing, we have also corrected a minor clerical error by

substituting the words twenty-four cents for twenty-five cents appearing in the opinion.

Subject to the foregoing comments, we now on rehearing adhere to the conclusions reached in our previous opinion.

### OPINION ON MOTION FOR LEAVE TO FILE AMENDED PETITION FOR REHEARING AND FOR STAY

PER CURIAM.—Appellees, Dallas Sells et al., filed "A Motion for Leave to File an Amended Petition for Rehearing and For Stay of Execution of Judgment." The appellees have raised some question as to the authority or propriety of this court in making corrections in the original opinion on consideration of a petition for rehearing in this case. We denied the petition for rehearing, with a short opinion, noting the corrections that had been made. We said:

> "The court, on rehearing, on reviewing the record finds that the record in fact does *not* contain the Senate Journal, and the previous opinion has therefore been amended on rehearing to delete the statement as to what the Senate Journal disclosed in this case and to substitute therefor a statement as to the contentions of appellees, as to the contents of the Senate Journal.
>
> "Although not mentioned in the petitions for rehearing, we have also corrected a minor clerical error by substituting the words twenty-four cents for twenty-five cents appearing in the opinion.
>
> "Subject to the foregoing comments, we now on rehearing adhere to the conclusions reached in our previous opinion."

No one can seriously question our right or duty to make corrections in an opinion to conform to the record when they are brought to the attention of the court in a petition for rehearing. Of course, the very purpose of a petition for rehearing is

to enable the court to make any modifications or corrections that it finds advisable. Such changes in the original opinion have in the past been made either by changing the original opinion directly or by reference in the opinion on rehearing.[1]

We point out that whether the corrections in the original draft of the opinion had been made or not, the appellees were not prejudiced or misled. Even if we assumed, either through judicial notice or that the record in the trial court below showed the vote in the Senate Journal to be 25 ayes and 24 noes for the bill in question, we would still be compelled to deny the appellees' contention that we should go behind the certificate of the presiding officers of the legislature authenticating the passage of the bill. To have accepted appellees' contention would have required that we overrule the precedent of a long-standing line of cases to the contrary going back nearly a century in this state beginning with the case of *Evans, Auditor of State* v. *Browne* (1869), 30 Ind. 514. The reasoning connected with this precedent is made clear in the original opinion in this case and should be no surprise to any of the parties upon a petition for rehearing.

This court would have been confronted also with a further constitutional provision which says:

" . . . whenever the Senate shall be equally divided he (the Lieutenant Governor) shall give the casting vote." Art. 5, Sec. 21, Constitution of Indiana.

If the Senate were equally divided in the passage of a bill, it is obvious that a bill could not receive a vote of "a majority of the members elected to each house" as provided in another part (Art. 4, Sec. 25)

---

1. 2 I. L. E., Sec. 672; Indiana Trial & Appellate Practice, Sec. 2826.

of the Constitution of this State, since the Lieutenant Governor, in breaking the tie in voting, is not "an elected member" of the Senate. There could never be, in the case where the Lieutenant Governor voted in a tie, "a majority of the members elected" voting in favor of the bill, as provided in Art. 4, Sec. 25. Article 5, Sec. 21 apparently conflicts to some extent with Article 4, Sec. 25 when tie voting is involved in the Senate. The Constitution has to be read as a whole and not as a part. The solution to this question is not as simple as some people, untrained in the law and unfamiliar with the Indiana Constitution, may think. We, however, do not and need not decide this question in view of the consistent, long-standing precedent in the cases beginning with *Evans* v. *Browne, supra,* which have held that this court will not go behind a properly authenticated certificate of the presiding officers of the two houses of the legislature that a bill has been duly enacted, except in the case of fraud as previously stated in our opinion.

We have given due consideration to appellees' motion for leave to file an amended petition for rehearing. We find that the appellees have not been prejudiced as they claim, since we did not say in the opinion that we took "judicial notice" of the vote recorded in the Senate Journal. We have merely corrected a statement in the opinion concerning the record with reference to the Senate Journal. Judge Niblack in the trial court, following the above mentioned long-standing precedent on this issue, excluded all such evidence and there was nothing before us other than what the "appellees contend" with reference to such matter.

Motion overruled.

NOTE.—Reported in 192 N. E. 2d 753. Rehearing denied 193 N. E. 2d 359. Motion for leave to file amended petition for rehearing and for stay denied 193 N. E. 2d 359.