# McGuire *v*. Philadelphia (No. 2).

*Municipalities—Increase of indebtedness—Increase based on taxable personal property—Election—Notice of election—Publication of amount of indebtedness—Act of June 17, 1913, P. L. 507—Constitutional law—Title of acts.*

1. The Act of June 17, 1913, P. L. 507, imposing taxes upon certain classes of personal property for city and county purposes in cities coextensive with counties, is constitutional. It is not in violation of Article III, Section 3, of the Constitution, providing that "no bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

2. The provisions of the said Act of June 17, 1913, P. L. 507, are effective to increase the borrowing capacity of the City of Philadelphia by seven per centum of the last assessed valuation of personal property, preceding the date of the loan.

3. The statutory requirement relating to public notice to be given by advertisement of an election to be held for the purpose of submitting to electors the question of a proposed increase of municipal indebtedness, is that it shall contain, inter alia, "the amount of the existing debt" of the municipality. This provision is to enable the elector to act not only intelligently but prudently in casting his ballot for or against a proposed increase of the indebtedness of his municipality, and it is mandatory upon the public authorities.

4. The corporate authorities of the City of Philadelphia, in giving public notice of an election to be held for the purpose of authorizing an increase of indebtedness, deducted from the gross indebtedness of the city a sum which had been assumed by a school district coincident with the city, and published only the balance of the debt after such deduction. *Held*, this deduction was unlawfully made, and, therefore, the publication of the amount of the indebtedness was inaccurate, and an injunction was issued restraining the election.

MR. JUSTICE ELKIN dissents.

Argued March 23, 1914. No. 691, Miscellaneous Docket No. 2, 1914. Original Bill in Equity by Frederick T. McGuire, a citizen and a taxpayer of the City of Philadelphia, in his own behalf and in behalf of such citizens and taxpayers of said city as may join herein, v. The City of Philadelphia, a Municipal Corporation of the Commonwealth of Pennsylvania of the first class, and Rudolph Blankenburg, Mayor, John M. Walton, Controller, and William McCoach, Treasurer of the said City. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Injunction granted.

Taxpayer's bill in equity to restrain the holding of an election.

On March 30, 1914, the following decree was entered and subsequently the opinion of the court was filed, in which the facts appear:

March 23, 1914, this cause came on to be heard on bill and answer and was argued by counsel and now March 30, 1914, on due consideration thereof, it is ordered, adjudged and decreed as follows:

1. That the ordinance of the City of Philadelphia approved February 21, 1914, entitled "An ordinance to amend an ordinance approved February 13, 1914, signifying the desire of the corporate authorities of the City of Philadelphia to increase the indebtedness of the said city of the sum of twelve millions nine hundred thousand dollars," and the said ordinance of February 13, 1914, are hereby declared invalid.

2. That a writ of injunction be issued perpetually restraining the City of Philadelphia, Rudolph Blankenburg, mayor of the said city, John M. Walton, controller of the said city, and William McCoach, treasurer of the said city, the said defendants, and each of them, from holding an election for authorizing an increase of the indebtedness of said city in the said sum of twelve millions nine hundred thousand dollars, from signing,

countersigning or paying any warrant for the expense of advertising the ordinance authorizing the holding of said election, or for holding said election, and from borrowing on the faith and credit of the City of Philadelphia the said sum of twelve millions nine hundred thousand dollars or any part thereof, and from issuing the bonds of the said city for the said sum or any part thereof. It is further ordered that the City of Philadelphia pay the costs of this proceeding.

*Theodore F. Jenkins,* for plaintiff.—The Act of June 17, 1913, P. L. 507, increasing the borrowing capacity of the City of Philadelphia is unconstitutional in that its subject matter is not properly expressed in its title, and it embraces two distinct objects: Elliot v. Philadelphia, 229 Pa. 215; Payne v. School District, 168 Pa. 386.

*Michael J. Ryan,* City Solicitor, with him *Ernest Lowengrund,* Assistant City Solicitor, for defendants.— Money at interest, and other securities, and personal property made taxable for city and county purposes by Section 1 of the Act of June 17, 1913, P. L. 507, is to be considered as taxable property of the city in measuring its borrowing power for the purpose of permanent improvements: Elliot v. Philadelphia, 229 Pa. 215.

The act is constitutional: Bennett v. Norton, 171 Pa. 221; Seabolt v. Commissioners of Northumberland County, 187 Pa. 318; Com. v. Gilligan, 195 Pa. 504; Com. v. Mintz, 19 Pa. Superior Ct. 283; Bennett v. Hunt, 148 Pa. 257; Com. v. Jones, 4 Pa. Superior Ct. 362; Kelley v. Mayberry Township, 154 Pa. 440; Com. v. Depuy, 148 Pa. 201; Reber's Petition, 235 Pa. 622; Booth v. Miller, 237 Pa. 297; Com. v. Provident Life & Trust Co., 12 Pa. D. R. 516; Com. v. Caulfield, 27 Pa. Superior Ct. 279, 211 Pa. 644.

OPINION BY MR. JUSTICE BROWN, May 12, 1914:
By an ordinance of the select and common councils of

the City of Philadelphia, approved by the mayor February 21, 1914, the corporate authorities of the municipality signified their desire to increase the indebtedness of the city in the sum of $12,900,000, and it was directed that an election be held on March 31, 1914, for the purpose of obtaining the assent of the electors of the city to the said proposed increase of its indebtedness. This bill, of which we took original jurisdiction, in connection with another filed by the same complainant—No. 690, Miscellaneous Docket No. 2—was filed to have the said ordinance declared invalid; to enjoin the holding of the said election; to restrain the defendants from signing, countersigning or paying any warrant for the expense of advertising the ordinance relating to the said proposed increase of indebtedness, and from borrowing, on the faith and the credit of the city, any part of the proposed loan. Plaintiff's complaint is that the proposed increase of the city's indebtedness will exceed its borrowing capacity as limited by the Constitution.

The last assessed valuation of taxable real property in the City of Philadelphia preceding the ordinance of February 21, 1914, was $1,641,316,027, and it is conceded by learned counsel for complainant that if the loan of $8,-600,000—the subject of the other bill—was not validly authorized, the city's borrowing capacity was not exceeded in authorizing the loan of $12,900,000. As the said proposed loan of $8,600,000 has been declared invalid, the city's right to make the proposed loan of $12,-900,000 is not to be questioned; but, as the defendants aver in their answer that the city had a largely increased borrowing capacity based upon the last assessed valuation of personal property, we deem it proper to pass upon that question, though the determination of it is not essential in view of the undoubted borrowing capacity of the city, based upon the valuation of real property alone. Our reason for now passing upon the question is, as was said by the chief justice at the argument, that it is "sure to arise in the near future and until it is finally settled,

neither the city authorities nor the voters at an election for the increase of loans, nor the purchasers of city bonds can act with certainty."

The last assessed valuation of personal property preceding February 21, 1914, was $571,539,535.75, and the authority of the city to make it part of the basis of its borrowing capacity is found in the Act of June 17, 1913, P. L. 507. But it is said—though not argued with much seriousness—that the Act of 1913 is unconstitutional because the title to it contains more than one subject, and is, therefore, violative of Article III, Section 3, of the Constitution, which provides that "no bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title." There is to be found in the title to the Act of 1913 but one subject, and that is the imposition of taxes upon certain classes of personal property for the purpose of providing revenues for the State, counties and for cities and counties when coextensive. The one main subject of the act is taxation upon certain classes of personal property. This is so clearly expressed in the title as to give notice to every owner of any kind of personal property that the provisions of the act may affect him. The title, therefore, led to an inquiry into what was contained in the body of the bill. Everything appearing in the title is germane to the one main subject, and the same is true of the several provisions in the bill itself. They relate to and are the means of carrying out the one general purpose of the act. It is not necessary to show this by discussing those provisions in detail. Among the authorities sustaining the constitutionality of the act are Reber's Petition, 235 Pa. 622, and Booth & Flinn Ltd. v. Miller, 237 Pa. 297. We now declare it to be valid legislation.

As the city was clearly within its borrowing capacity in passing the ordinance approved February 21, 1914, so much of our decree of March 30, 1914, as declared the same invalid is now vacated. But, for a reason to be

briefly stated, the injunction staying the election advertised for March 31, 1914, properly went out, and so much of the decree as enjoined it is not to be disturbed. The statutory requirement relating to the public notice to be given by advertisement of an election to be held for the purpose of submitting to electors the question of a proposed increase in municipal indebtedness is that it shall contain, inter alia, "the amount of the existing debt" of the municipality. This wise provision is to enable the elector to act not only intelligently, but prudently, in casting his ballot for or against a proposed increase of the indebtedness of his municipality, and it is mandatory upon the public authorities. In the public notice given by the corporate authorities of the City of Philadelphia of an election to be held on March 31, 1914, there was deducted from the gross indebtedness of the city $6,382,842.88, the balance of the debt of the city assumed by the school district under the provisions of the school code. This, as appears in the opinion this day handed down in the other proceeding instituted by the complainant, could not be done, and the electors, if they had been permitted to vote, would have done so under the impression that the debt of the city was $6,382,842.88 less than it really was. This was a substantial, though unintentional, error on the part of the city authorities in giving the public notice of the election required by the statute, and, for the reason stated, if it had been held, it would have been invalid.

DISSENTING OPINION BY MR. JUSTICE ELKIN:

Counsel on both sides agree that if the authorized loan of $8,600,000 be declared invalid, the loan of $12,900,000 to be voted on at the special election called for the purpose is within the borrowing capacity of the city. The loan voted on in November, 1913, was based upon the assessment for that year, but subsequently the assessment for 1914 was completed, and this assessment very largely increased the borrowing capacity of the city. We

must accept these as established facts under the pleadings, and therefore the question of the borrowing capacity of the city is not in this case. It is objected, however, that the public notice given by advertisement as the law requires did not correctly state the indebtedness of the city and that an election held under a defective notice would be invalid. The notice is said to be defective because it contained, as an item of municipal indebtedness, the authorized loan of $8,600,000, and deducted from this municipal indebtedness $6,382,842, the balance of the debt of the city assumed by the school district. This simply stated the facts as they were at the time the notice was published, and the city authorities were bound to give the facts as they existed. The voters could not have been misled as to the borrowing capacity of the city by anything contained in the notice, because if for any reason loans authorized, should subsequently be declared invalid, or if they should never be negotiated, the city would have a larger borrowing capacity, and as the borrowing capacity increased, the danger of exceeding the constitutional limit would grow less.

The published notice charged the city with the loan of $8,600,000.00 authorized by vote of the electors last November, and claimed a deduction of $6,382,842.88, the balance of the debt assumed by the school district; but even when these items are adjusted in accordance with the present decision of this court, the figures on their face show an increase in the borrowing capacity of the city of $2,217,157.12 more than was claimed in the notice which is now condemned on the ground that it does not meet the legal requirements. When the loan of $8,600,000.00 was stricken down, and the city was charged with the item of $6,382,824.88 without any deduction, its borrowing capacity was ample to sustain the loan of $12,900,-000.00 to be voted on at the special election. The primary purpose of publishing the notice is to give the voters the facts as they are so that they may know what the indebtedness is and what borrowing capacity the city

has within the constitutional limit. The notice as published met these requirements by giving the facts as they existed at the time, and nothing more could be required reasonably. To my mind the objection to the published notice is too technical to be convincing.

In addition it may be suggested that the question of the borrowing capacity of the city, involving the deduction of the indebtedness assumed by the school district, was passed upon by Court of Common Pleas No. 4, in Philadelphia v. Walton, 22 Pa. D. R. 301, wherein it was held by the learned president judge of that court, prior to the election in November, 1913, that the indebtedness assumed by the school district should be deducted from the municipal indebtedness, and if so, even under the old assessment the city had a borrowing capacity sufficient to authorize the loan. No appeal was taken from that judgment and the city authorities were bound to respect that decision in all subsequent proceedings, or at least until the law was otherwise declared by an appellate court. The election notice followed in every particular the law as declared at the time it was published, and since the notice gave the facts just as they were, and nothing contained therein could possibly have misled the voters as to the power of the city to authorize the loan within the constitutional limit, I cannot agree that the election should be enjoined on the sole ground of a defective published notice.

In this case I would also sustain the position of the learned city solicitor and dismiss the bill.