Argued October 26, 1964, reversed and remanded
February 10, 1965

# HARVEY ALUMINUM v. SCHOOL DISTRICT NO. 9, WASCO COUNTY
## and
## SCHOOL DISTRICT NO. 12, WASCO COUNTY ET AL

399 P. 2d 149

*M. D. Van Valkenburgh,* The Dalles, and *Howard A. Rankin,* Portland, argued the cause for appellant. With them on the briefs were Heisler & Van Valkenburgh, The Dalles, and Shuler, Sayre, Rankin & Myers and Michael J. Walsh, Portland.

*Charles A. Phipps,* The Dalles, argued the cause and submitted a brief for respondent School District 12. With him on the brief were Phipps, Phipps & Dunn, The Dalles.

*Sam F. Speerstra,* Salem, argued the cause and submitted a brief for respondent Harvey Aluminum. With him on the brief were Rhoten, Rhoten & Speerstra and David A. Rhoten, Salem.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

O'CONNELL, J.

Plaintiff seeks a declaratory judgment establishing the boundary line between School District No. 9 and School District No. 12 in Wasco county. School District No. 9 appeals from a decree fixing the bound-

ary line in accordance with the contention of plaintiff and School District No. 12. The following diagram is helpful in explaining the respective claims of the parties:

The dispute arises because the description of School District No. 9 and the description of School District No. 12 found in the records of the Wasco County Dis-

trict Boundary Board overlap. According to these descriptions the east boundary of District No. 9 would be the line designated "C" on the diagram, and the west boundary of District No. 12 would be the line designated "A". These overlapping descriptions were adopted on the same day, June 14, 1916. To complicate the matter further, the evidence clearly shows that until this dispute arose neither of these lines was treated as the boundary by the various Wasco county officials or by the school districts themselves.

The boundary recognized by the various county units was the line designated as "B" on the above diagram and which is referred to as the "assessor's line" because it was marked out on the assessor's records as the boundary between the two districts.[1] There was testimony that the assessor's line had been relied upon as the boundary both before and after 1916, the date upon which the District Boundary Board purported to fix the boundaries as indicated above.

We have referred to the 1916 descriptions of the respective school district boundaries as overlapping. It is important to note that in the minutes of the District Boundary Board purporting to establish the boundary of School District No. 9, a blue pencil line had been drawn through a part of the description. The line appears faintly as if lightly drawn or subjected to an attempted erasure. There is no evidence explaining why the blue line was drawn.

■ The trial court was of the opinion that the blue

---

[1] The "assessor's line" was relied upon as the boundary by the following officials: the secretary of the District Boundary Board, the Deputy County Clerk (for furnishing school districts with lists of voters for school elections), the County Assessor (for predicating assessments for the two districts), and the County Engineer (for preparing a map for the Wasco County Reorganization Committee).

line constituted an "obliteration on the official record" and overcame the presumption of the validity of the record. We cannot agree. In the absence of evidence showing that the obliteration was the official act of the District Boundary Board, the description must be taken as it was apparently recorded. The blue line may have been made by anyone who had access to the record. There is no basis for assuming that the line was intended as an official correction of the record. We must, therefore, begin with two irreconcilable descriptions.

■■ In that circumstance, if the boundary is to be established judicially, it seems most reasonable that it should be drawn along the line relied upon for a long period of time by the two school districts and by other Wasco county agencies. Where there is a dispute between sovereign states as to the boundary between them, "It is a principle of public law universally recognized, that long acquiescence in the possession of territory and in the exercise of dominion and sovereignty over it, is conclusive of the nation's title and rightful authority."[9] We are of the opinion that a similar principle is applicable to establish the boundary between lesser governmental units such as the school districts in this case.

■■ If the District Boundary Board, acting within its authority, had chosen the line relied upon by District No. 12 or had fixed some other line, we would have been bound by it because, as we have observed in previous cases, the fixing of school district boundaries is a legislative function vested in the district boundary

---

[9] Michigan v. Wisconsin, 270 US 295 at 319, 46 S Ct 290, 70 L Ed 595 (1925).

boards.[9] But here the boundary board did not fix the line and the parties have submitted their dispute to the courts for resolution. It is doubtful whether the boundary board would have the authority under ORS 330.090 to resolve the controversy in the present case.[10] Under these circumstances, it is appropriate for the court to treat the case as ripe for adjudication.

The decree is reversed and the cause is remanded with directions to enter a decree in accordance with this opinion.

[9] School Dist. No. 68 v. Hoskins et al, 194 Or 301, 240 P2d 949 (1952).

[10] ORS 330.090 authorizes the district boundary board to alter the boundaries of districts only if it finds among other things, that "The proposed change will result in the improvement of the educational facilities available to the children in the area affected by the proposed change or will result in substantial operating economies in the district affected." It does not appear that either of these findings would be warranted by the evidence in the case at bar. It may also be noteworthy that the statute does not permit changes to be made solely for tax advantages to the property owners in the district or area affected by the change.