Argued May 2, affirmed as modified November 8, 1967

# HARVEY ALUMINUM, *Respondent, v.* SCHOOL DISTRICT NO. 9, WASCO COUNTY, *Appellant,* SCHOOL DISTRICT NO. 12, WASCO COUNTY
### ET AL, *Respondents.*
433 P. 2d 247

*M. D. Van Valkenburgh,* The Dalles, and *Howard A. Rankin,* Portland, argued the cause for appellant. On the briefs were Heisler & Van Valkenburgh, The Dalles, and Shuler, Rankin, Myers & Walsh, Portland.

*Sam F. Speerstra,* Salem, argued the cause for respondent Harvey Aluminum. On the briefs were Rhoten, Rhoten & Speerstra, and David A. Rhoten, Salem.

*Charles A. Phipps,* The Dalles, argued the cause for respondent School District No. 12. On the brief were Phipps, Phipps & Dunn, The Dalles.

*Donald H. Turner,* Wasco County District Attorney, The Dalles, argued the cause and filed a brief for respondents and cross-appellants Trent, Wood and (Morris) Bennett.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, DENECKE, REDDING and FORT,* Justices.

O'CONNELL, J.

This is an appeal by defendant School District No. 9 from a decree of the circuit court of Wasco County purporting to carry out our mandate in *Harvey Aluminum v. School District No. 9,* 239 Or 571, 399 P2d 149 (1965). The sheriff, assessor and treasurer of Wasco County, who are also defendants, cross-appeal.

The litigation commenced on September 6, 1962, when plaintiff filed a declaratory judgment suit to determine the boundary line between School District No. 9 and School District No. 12. The assessor, treasurer and sheriff were not named as parties in the

---

* Fort, J., did not participate in this decision.

complaint. On November 15, 1962, plaintiff filed its amended complaint naming the sheriff as defendant (but not the assessor or treasurer) and deposited with the clerk of the court the sum of $51,236.43 as a portion of its 1962-63 ad valorem taxes contending that this amount should go to defendant District No. 12, based upon a boundary line which plaintiff alleged was the "true" boundary line between District No. 9 and District No. 12.

On March 2, 1964, the trial court entered a decree establishing the boundary line between the two school districts in accordance with plaintiff's contention. The decree specifically reserved decision as to the disposition of the money deposited by plaintiff. Defendant District No. 9 appealed contending that the boundary line previously used for a period of approximately seventy years was the true line. In an opinion handed down on February 10, 1965, we reversed the trial court in *Harvey Aluminum v. School District, supra.* Our mandate in that case was issued on March 10, 1965, in which we reversed and remanded the cause with directions to enter a decree in conformity with our opinion.

Pending the first appeal, District No. 12 had filed a petition for supplemental relief requesting that the $51,236.43 paid to the clerk of the court be paid over to District No. 12 based upon the trial court's determination of the boundary line fixed by the trial court, and further requesting that it receive its share of the 1963-64 taxes ($89,132.17) paid by plaintiff also in accordance with the boundary line established by the trial court. (The $89,132.17 had been turned over to District No. 9 by the sheriff prior to the trial court's original decree.) On April 15, 1964, the trial court entered an order making the assessor and treasurer

parties defendant. Demurrers to District No. 12's petition were filed but were overruled. Later in 1964 plaintiff paid to the sheriff of Wasco County its 1964-65 taxes amounting to $83,227.72. On August 24, 1964, District No. 12 filed a motion for an order to require the assessor to change the tax roll in accordance with the change in boundary made by the trial court's previous ruling. The trial court entered an order making the change as requested and the 1964-65 taxes were assessed, levied, collected and disbursed upon the basis of the boundary fixed by the trial court.

Thereafter, our mandate reversing the trial court was entered and on September 12, 1965, the trial court entered a decree declaring that the new boundary between the districts was to be deemed to have been established as of March 10, 1965, the date of our mandate. The decree also directed that the sum of $51,236.43, which had been deposited by plaintiff with the clerk of the court on November 15, 1962, be disbursed to the sheriff of Wasco County for disbursement to the proper taxing bodies in accordance with the boundary which we described in our original opinion. The decree directed that no penalty or interest be assessed against plaintiff.

Defendant District No. 9 contends that the trial court's supplemental decree should have provided that the taxpayers of District No. 9 be reimbursed the $83,227.72 which had been turned over by the sheriff to District No. 12 and further that the $51,236.43, paid to the clerk by plaintiff in 1962, was not an effective tender or payment of tax moneys and therefore plaintiff should have been required to pay interest and penalties in addition to the amount deposited in court.

It is the contention of plaintiff and defendant School District No. 12, on the other hand, that the

1964-65 taxes in the sum of $83,227.72 paid to District No. 12 between the date of the lower court's decree (March 2, 1964) and this court's mandate (March 10, 1965) are not affected by the reversal of the lower court's decree. It is further contended by plaintiff that no interest or penalties are due on the 1962-63 payment ($51,236.43) because a proper tender was made at the time the declaratory judgment action was filed.

■ It has been repeatedly held that the reversal of a lower court decree nullifies the decree and leaves the case standing as if no decree had been entered.[1] However, there is nothing inevitable about this conclusion and if a salutary purpose is served by giving effect to an erroneous lower court decree pending an appeal from it, there is no reason for not giving temporary effect to the decree.

■■ We have previously recognized that "a court of final review has the power to limit the effect of an overruling decision so that it will operate prospectively only."[2] If we have the power to limit our decisions so that they do not affect action taken in reliance upon one of our previous decisions, we also have the power to limit our decisions so as not to affect action taken in reliance upon a decree of the trial court from which an appeal has been taken.

■ Ordinarily a party to a case on appeal has no right to treat the decision of the lower court as having the finality which characterizes a previous decision of a court of final review, and consequently action taken in reliance upon a lower court decree ordinarily is at the risk that it will be reversed on appeal. But as we have previously stated, this need not always be

[1] Sloan v. Court Hotel, 72 Cal App2d 308, 164 P2d 516 (1945); cf., Sheppard v. Blitz, 177 Or 501, 511, 163 P2d 519 (1945).

[2] Linn County v. Rozelle, 177 Or 245, 283, 162 P2d 150 (1945).

so; unique circumstances may call for giving the same effect to the decree of the lower court as if the appellate court itself had previously entered it.

We think that the circumstances in the present case are of this unique character. In the opinion in the original appeal we were careful to explain that "the fixing of school district boundaries is a legislative function vested in the district boundary boards," but because of the peculiar circumstances of the case (the board had not fixed the boundary and probably had no statutory authority to do so under the circumstances) we deemed it appropriate for the court to treat the case as ripe for adjudication. In effect, then, the trial court's decree and our own decree in the original appeal constituted a substitute in each instance for the decision of the boundary board and as such carried out the same kind of legislative policy as that which the boundary board itself would have carried out if it had acted. We make a point of this because if the decision rendered by the trial court or by this court in fixing the boundary had been made by the boundary board itself, ORS 308.225 expressly provided that the change in the boundary was to be disregarded if it was made after June 30 of the taxable year.[9] It seems evident that this statute was enacted to avoid disrupting the tax collection process once it has advanced to a certain stage. Even if it is assumed that the changes in boundary referred to in ORS 308.225 are those made by the boundary board under its statutory authority, this reading of the statute does not exclude the application of the same principle by the court. As

---

[9] ORS 308.225. "In preparing the assessment roll in any year county assessors shall disregard changes made in the boundary lines of taxing districts when the changes are made subsequent to June 30 of such year."

several cases have held, the remedy set forth in a statute may be "an appropriate model" for the court to adopt in adopting its own rule.[⊕] We regard ORS 308.225 as "an appropriate model" to apply in the present case.

The application of the principle stated in ORS 308.225 would result in disregarding the change in boundary brought about by our original mandate and treat the boundary fixed by the trial court as valid for the purpose of collecting the 1964-65 taxes. Our mandate was entered on March 10, 1965. This came after the June 30, 1964, deadline set by the statute. The taxes which were levied, collected and disbursed upon the basis of the boundary established by the trial court should not be disturbed by our reversal of the trial court's decree. In this respect, therefore, the decree of the trial court is affirmed.

We turn now to the second issue on appeal. The sheriff, assessor and treasurer of Wasco County and School District No. 9 argue that the sum of $51,236.43 paid into court by plaintiff at the outset of this litigation was not a valid payment of the 1962-63 taxes owed by plaintiff and that, therefore, plaintiff is subject to the penalty for delinquent taxes. It is defendants' position that taxes must be paid to the tax collector—in this case the sheriff of Wasco county—and payment can not be made by deposit into court. The trial court held that plaintiff was not subject to penalty for the delinquent payment of taxes. We hold that this was error.

■■ Under some circumstances a deposit of money

---

[⊕] In re Waltreus, 62 Cal2d 218, 397 P2d 1001, 42 Cal Rptr 9, cert. den. 382 US 853 (1965); Decorative Carpets, Inc. v. State Board of Equalization, 58 Cal2d 252, 373 P2d 637, 23 Cal Rptr 589 (1962).

into court will be regarded as a tender of taxes, relieving the taxpayer of the statutory penalty for the delinquent payment of taxes. Thus the taxpayer may be exempt from penalty if his failure to pay the tax on time is due to a bona fide but mistaken belief that he is not liable for the tax or that there is no one legally qualified to receive payment.[5] The exemption from penalty has also been extended to cases in which the taxpayer, being unable to determine which of two taxing units is entitled to impose the tax, tenders the amount of the tax into court.[6] But the instant case does not fall within the pattern of any of the cases exempting the taxpayer from the imposition of a penalty. The deposit of the money into court in this case was not necessary to protect plaintiff's interests. It is conceded by plaintiff that the $51,236.43 deposited in court represented a part of the taxes owed by it. Plaintiff arrived at this sum as follows: First plaintiff estimated the total tax it would owe if the boundary line were not changed in accordance with its contention. It then estimated the amount out of this total that District No. 9 would lose to District No. 12 in tax revenues if the line were fixed in accordance with its contention. This amount, estimated at $51,236.43, was the sum deposited into court. It is conceded that whether this amount eventually went to District No. 9 or to District No. 12, plaintiff owed it. Therefore, any controversy between the two districts with respect to this **fund** could have no effect upon plaintiff's liability to

---

[5] See Commonwealth v. Cincinnati, New Orleans & Texas Pacific Ry. Co., 288 Ky 43, 155 SW2d 460, 137 ALR 301 (1941).

[6] See Appeal of Fidelity-Philadelphia Trust Co., 337 Pa 34, 10 A2d 547, 129 ALR 265 (1939). These cases exempting taxpayers from the penalty for delinquent taxes have done so even though the amount owing was not tendered into court. It is not necessary for us to decide whether a refusal to pay taxes without tender would excuse a taxpayer from the statutory penalty.

pay it. The school districts are not tax collecting authorities; taxes are payable to the sheriff and then disbursed by the county to each of the districts within it. Consequently, there was no reason for plaintiff to withhold the $51,236.43 from the tax collector to whom it was admittedly owing at the time the tax fell due. We hold that plaintiff is subject to the penalty for delinquent taxes.

Defendants Wood and Bennett, the assessor and treasurer respectively, contend that they were necessary parties in these proceedings and that they were not made parties until April 15, 1964, which was after notice of appeal was filed in the original appeal. The failure to name these defendants as parties did not adversely affect them with respect to the determination of the boundary on appeal. We have held that our decision would not be given retroactive application and that effect would be given to the erroneous lower court determination of the boundary which was the line relied on by the assessor and the treasurer. Because the conclusion we reach in the present case eliminates the need for any corrective action by the taxing authorities, we fail to see, and no reason has been offered, how the assessor and treasurer have been adversely affected. And since we have held that plaintiff is subject to the penalty for delinquent taxes, these defendants could have no objection to the disposition of the case on that issue. All the defendants had the opportunity to present their arguments with respect to the prospective operation of our previous decision. We are of the opinion, therefore, that the cross-appellants have not been placed at a disadvantage because of the failure to join them until April 15, 1964.

The decree of the trial court is affirmed insofar as it denies the relief sought by District No. 9, and is

modified so as to impose upon plaintiff the liability for the delinquent payment of taxes. The cause is remanded for the computation of plaintiff's liability in this latter respect.