GOSHEN COUNTY COOPERATIVE
BEET ASSOCIATION, Appellant
(Plaintiff),

v.

Richard PEARSON; Robert Ring; Tom F. Abe; Douglas Abe; George Fujinami; Robert A. Cook; Kelly Schmer; Terry Margheim; Carl Eisenbarth, Jr.; Neil E. Burkhart; Robert Strecker; Keith Strecker; Howard Edwards; Mike Edwards; Vernon Briggs; Thomas E. Briggs; Herman Ring; Ed H. Weglin; Ed H. Weglin, Jr.; Ruben Schreiner; Alex Schreiner; Triple H. Farms; Bernard G. Haas; Leonard Schick; Carl F. Rupp; Lippincott Farms; Leroy E. Meininger; Luiz Ruiz, Jr.; Gabriel Ruiz; Alvin Ruiz; John L. Bath; Bill Vandivort; Hort Farms, Inc.; and Phillip Hort, Appellees (Defendants),

Buzzard Farming, Inc.; and Harold E. Mehling, (Defendants).

No. 84–175.

Supreme Court of Wyoming.

Oct. 9, 1985.
Rehearing Denied Oct. 29, 1985.

Frank J. Jones of Jones & Weaver, P.C., Wheatland, for appellant.

Keith G. Kautz of Sawyer, Warren & Kautz, Torrington, for appellees.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROSE, Justice.

The issue raised in this appeal is whether the federal injunction entered May 20, 1983, shields the appellees, 34 beet growers in and around Goshen County, Wyoming, against suit for breach of contract for conduct occurring while the injunction remained in effect. The injunction restrained appellant Goshen County Cooperative Beet Growers Association (Association) from interfering in any manner with any beet grower who negotiated an independent contract for the sale of his sugar beet crop during the 1983 growing season. The district court determined that the injunction protected those who acted in reliance on it, notwithstanding the subsequent reversal of the injunction by the court of appeals. Accordingly, the district court entered summary judgment against the Association in its action to recover damages from named growers who allegedly entered into separate marketing contracts in violation of their cooperative agreements with the Association during the effective period of the injunction. We will reverse.

## FACTS

Appellant is a cooperative marketing association formed and operating under the Cooperative Marketing Act, § 17–10–101 et seq., W.S.1977. Appellees are beet growers and members of the appellant Association. The articles of incorporation of the Association set out the organization's purposes:

"That the purpose of this corporation is to organize a cooperative marketing association to assist and encourage the business of producing sugar beets in a profitable manner to a grower of the same * * *.

"To become an agency for the marketing of beets grown by its members and to that end to enter into contracts with its members, and for the exclusive and irrevocable right to market their sugar beets and other products * * *." Article II.

The bylaws establish the procedures for managing the affairs of the Association and provide:

"The Association, acting by and through its Board of Directors, is designated the sole agent to negotiate and finalize each and every contract and amendments thereto for the sale of all sugar beets grown by members of this Association." Article VIII, Section 1.

The marketing contracts between the members and the Association implement the purposes of the organization:

"1. The Member hereby appoints the Association as his sole and exclusive agent for the purpose of negotiating a marketing contract or contracts for the sale of all sugar beets to be processed for sugar which are grown and harvested by him, or acquired by him during the term of this contract. The Member agrees to market all such sugar beets exclusively through the Association.

"2. The Member agrees not to market nor to enter into a contract to market any crop of sugar beets to be harvested in a crop year for which no agreement for the sale of such crop of sugar beets has been negotiated by the Association." [1]

---

1. Section 17–10–121(a), W.S.1977, authorizes agreements which designate a cooperative marketing association as the exclusive agent for the

In the event a member markets sugar beets in violation of these provisions, the contracts specify the sum of two dollars per ton of beets wrongfully sold as the liquidated damages sustained by the Association.

In November of 1982, representatives of the Association and the Holly Sugar Corporation began negotiating a contract for marketing the sugar beets to be grown by members during 1983. Between November, 1982 and May, 1983, Holly Sugar presented several contract offers, each of which was rejected by a substantial majority of the membership.

On May 11, 1983, Holly Sugar and two of the appellees filed an action in the United States District Court for the District of Wyoming to enjoin the Association from interfering in any manner with beet growers who pursued contract negotiations with Holly Sugar for the purchase and sale of the 1983 beet crop. The farmers and Holly Sugar based their claims for relief on the Association's alleged violations of federal antitrust laws and intentional interference with their prospective business advantages. Following a hearing, the federal court, on May 20, 1983, issued a permanent injunction which provided in part:

> "NOW, THEREFORE, IT IS
>
> "ORDERED that the defendant in this action, the Goshen County Cooperative Beet Growers Association, together with its directors, officers, agents, employees and those acting in concert therewith be, and the same are, hereby enjoined from interfering, intimidating, threatening or harassing in any manner any beet grower in Goshen County who negotiates or contracts with Holly Sugar for the sale of their sugar beet crop in the 1983 growing season; it is
>
> "FURTHER ORDERED that each individual beet grower in Goshen County is free to enter into a separate and independent agreement with Holly Sugar for the growing and sale of sugar beets * * *."

The Association appealed this order, and on June 10, 1983, the Tenth Circuit Court of Appeals stayed the effect of the injunction pending resolution of the appeal. Between May 20, 1983, when the injunction issued, and June 10, 1983, when it was stayed, the appellees entered into contracts with Holly Sugar and planted their beet crops. The court of appeals reversed the federal district court's injunction on January 16, 1984. *Holly Sugar Corporation v. Goshen County Cooperative Beet Growers Association*, 725 F.2d 564 (10th Cir. 1984).

The Association subsequently brought the present breach-of-contract action to recover damages for the growing and marketing of sugar beets by appellees outside the marketing association. The trial court entered summary judgment against the Association on the ground that the federal court's injunction immunized the growers against suits on their cooperative marketing contracts.

## ISSUE

The Association words the issue for review:

> "DID THE ORDER OF THE UNITED STATES DISTRICT COURT PROTECT DEFENDANTS FROM AN ACTION FOR BREACH OF CONTRACT WHEN THE ORDER WAS ULTIMATELY REVERSED ON APPEAL?"

## DECISION

*Scope of the Injunction*

Preliminarily, we question the rights of 32 of the appellees in this case to rely on the protection of an injunction to which they were never a party. These appellees concede that they did not seek injunctive relief against the Association, either indi-

---

sale of all or part of its members' agricultural products:

"The association and its members may make and execute marketing contracts, requiring the members to sell, for a period of time, not over ten (10) years, all or any specified part of their agricultural products or specified commodities exclusively to or through the association or any facilities to be created by the association."

vidually or as members of a class. Nevertheless, they urge that their conduct was protected by the broad language of the federal court's order which purports to authorize "each individual beet grower in Goshen County" to enter into an independent contract with Holly Sugar.

We are mindful that a class action is the usual means by which a large group of potential litigants, similarly situated, obtains injunctive relief for violations of the antitrust laws. *Chmieleski v. City Products Corporation*, 71 F.R.D. 118 (W.D.Mo. 1976); Rule 23, Federal Rules of Civil Procedure. In the case at bar, only two of the growers, in addition to Holly Sugar, sought relief and were parties to the federal injunction. We need not explore, however, the nonparties' rights under the federal order, because we will hold that the injunction did not and could not permanently immunize any of the growers against enforcement of the valid contracts which they had made.

*Protection Afforded by an Injunction Following Reversal*

In considering the ramifications of a reversed injunction, courts in other jurisdictions have applied the rules applicable to reversals of judgments in general. *Welsh v. Sells*, 244 Ind. 423, 192 N.E.2d 753 (1963); *Willett Company v. Carpentier*, 4 Ill.2d 407, 123 N.E.2d 308 (1954); see also *Harvey Aluminum v. School District No. 9*, 248 Ore. 167, 433 P.2d 247 (1967) (absent unique circumstances, actions taken in reliance on a declaratory judgment are at the risk that it will be reversed on appeal). In Willett Company v. Carpentier, the trial court, in a previous taxpayers' class action, had held unconstitutional a particular amendment to the motor vehicle laws and had enjoined the secretary of state from collecting taxes or fees under the amendment. The Illinois Supreme Court subsequently reversed that decree. While the injunction was in effect, however, Willett Company paid the taxes imposed by the law prior to amendment, and the secretary accepted such payment and issued license plates under the compulsion of the injunc-

tion. Following the Supreme Court's decision reversing the injunction, the secretary brought an action against Willett Company to recover the difference between the taxes actually paid and the amount due under the amended act. The Illinois Supreme Court rejected Willett Company's argument that the injunction protected its conduct and that the secretary could not collect increased taxes retroactively:

"However, the rights of parties to an action, pending an appeal, are well settled. In *First National Bank v. Road District No. 8*, 389 Ill. 156, we said, page 161, 58 N.E.2d 884, at page 887:

"'A party to a suit is presumed to know of all the errors in the record, and such party cannot acquire any rights or interests based on such erroneous decree that will not be abrogated by a subsequent reversal thereof. If such party has received benefits from the erroneous decree or judgment, he must, after reversal, make restitution, and, if he has sold property erroneously adjudged to belong to him, he must account to the true owner for the value. Titles acquired by parties to the record under an erroneous decree or judgment will be divested by the subsequent reversal of such decree or judgment. [Citations.] A party to a decree cannot acquire any rights thereunder while the same is subject to review which he can assert after the decree is reversed, since the effect of the reversal is to abrogate the decree and leave thet [sic] cause as it stood prior to the entry of the decree. * *'

"We believe that the law set forth in that case is sound and is squarely applicable to the present case. * * * Any advantages which it [Willett Company] obtained by virtue of said erroneous decree cannot be retained by appellee, for the reversal leaves the case as though no such decree had ever been entered." 123 N.E.2d at 311.

In *Welsh v. Sells*, supra, the Indiana Supreme Court found it necessary to ex-

pressly mandate a prospective effect of its decision dissolving an injunction and reversing a trial court's judgment that a sales and use tax was unconstitutional. Without such prospective enforcement of the tax law, those who acted in reliance on the trial court's judgment and injunction would be subject to fines and penalties:

"In reaching a decision that the Act in question is constitutional (with the exceptions designated), this court is confronted with the fact that the purchasing public and retail merchants should be protected against liability, both criminal and civil, by reason of their failure to pay and collect taxes on transactions occurring during the period of the trial court's injunction. Undue hardships and injustices, without question, would occur were we to follow the principle of law that the reversal or overruling of an adjudication of unconstitutionality validates the statute from the date of its enactment. 16 C.J.S. Constitutional Law § 101, p. 469.

\* \* \* \* \* \*

"No court is so absolute that it can, by simply so decreeing, erase the past effects of and compliance with the trial court's injunction preventing the operation of the act in question during the period of this litigation. In justice to all parties involved, our decision must have only a prospective effect from the date of its certification. Both purchaser and retailers would otherwise be subject to fines and penalties, including imprisonment, by reason of failure to comply with the act." 192 N.E.2d at 765.

In *Edgar v. MITE Corporation,* 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982), United States Supreme Court Justice Stevens, concurring in part and concurring in the judgment, reasoned that an injunction reversed on appeal affords no protection from statutory penalties imposed as a result of actions taken in reliance on the injunction. Although a majority of the Court declined to consider the issue, that

said by Justice Stevens is persuasive and helpful to our resolution of this appeal:

"Since a final judgment declaring a state statute unconstitutional would not grant immunity for actions taken in reliance on the court's decision, certainly a preliminary injunction—which on its face does nothing more than temporarily restrain conduct—should not accomplish that result. Neither the preliminary injunction nor the subsequent judgment declaring the statute unconstitutional can fairly be construed as a grant of absolute immunity from enforcement of the Illinois statute.

\* \* \* \* \* \*

"My conclusions concerning the proper nature of injunctive and declaratory relief are not based upon arcane interpretations of common law. Federal courts are courts of limited jurisdiction. Before a federal court exercises any governmental power, it has a duty to determine its own jurisdiction to act. There simply is no constitutional or statutory authority that permits a federal judge to grant dispensation from a valid state law.

"\* \* \* The District Court in this case entered both an injunction restraining certain conduct by the Illinois Secretary of State and a judgment declaring a state statute unconstitutional. It did not—because it could not—grant immunity from the requirements of a valid state law." 457 U.S. at 651–654, 102 S.Ct. at 2645–46.

█ The foregoing cases concern the right of the state to enforce a valid state law, while the instant case concerns the right of a private entity to enforce a valid contract.[2] This distinction is not material, however, to our determination of whether the injunction affords appellees a complete defense to the Association's action for breach of contract. The reversal of the district court's injunction by the court of appeals abrogated the decree as though it had never been entered. While the injunction was in effect, however, the beet growers obtained certain advantages by negoti-

---

**2.** Nothing in the record suggests that the marketing contracts are not legally valid, and we assume their validity for purposes of reviewing the summary judgment entered in this case.

ating independently with Holly Sugar. The cooperative marketing contracts prohibit such conduct and provide for liquidated damages in relation to the tonnage of beets wrongfully sold. While the district court had authority to temporarily prohibit the Association from enforcing the marketing agreements, it had no authority to permanently immunize the growers against suits for actions taken in violation of valid contracts.

Appellees contend that in the event the Association is entitled to recover in this case, its damages are limited to the amount of the injunction bond. The posting of an indemnity bond protects the enjoined entity if the injunction was " 'wrongfully' sued out," *Liner v. Jafco, Inc.*, 375 U.S. 301, 305–306, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964). The face of the bond limits the amount recoverable by way of damages. *Weber v. Johnston Fuel Liners, Inc.*, Wyo., 540 P.2d 535 (1975). The majority of the appellees in the instant case, however, did not join the complaint for an injunction and did not post a bond to protect the Association from harm resulting from the issuance of an erroneous decree. These appellees are not entitled to rely on the injunction bond to compensate the Association for damages arising from their breaches of the marketing agreements.

Since the federal injunction did not, as a matter of law, immunize appellees from suit for contract violations during the effective period of the injunction, summary judgment was improper. We reverse the judgment and remand the case for further proceedings consistent with this opinion.